SWAIM *v*. MARTIN.

Opinion delivered April 30, 1923.

1. ATTORNEY AND CLIENT—BUSINESS TRANSACTIONS—BURDEN OF
PROOF.—As the relation of attorney and client is one of trust
and confidence requiring a high degree of fidelity and good
faith, the burden is on the attorney of proving the fairness
and equity of the transaction and the adequacy of the 'con-
sideration, and, upon his failure to make such proof, a court
of equity will treat the case as one of constructive fraud.

2. ATTORNEY AND CLIENT—BUSINESS TRANSACTIONS—BURDEN OF
PROOF.—The rule that an attorney who contracts with his cli-
ent has the burden of proving that no advantage has been taken
of the situation of the latter is not restricted to contracts or
dealings with respect to the rights or property in controversy in
the particular proceeding in which the attorney is acting for
the client, but it may extend to other transactions and con-
tracts where the relationship may be presumed to give the at-
torney some advantage over the client.

3. TENDER—WHEN NO DEFENSE.—Where, after a suit to vacate a
conveyance from a client to his attorney was brought, the plain-
tiff dismissed the suit in consideration of the execution by de-
fendant of a check, which was not paid, a subsequent tender
of the amount by the defendant was unavailing as a defense.

Appeal from Lonoke Chancery Court; *John E.
Martineau*, Chancellor; affirmed.

STATEMENT OF FACTS.

C. W. Martin and Ruby Martha Martin, his wife,
brought this suit in equity against W. D. Swaim and
H. W. Anderson to set aside a deed which had been made
by the plaintiffs to the defendants in consideration of
legal services rendered by W. D. Swaim.

It appears from the record that C. W. Martin in-
vented a device known as moving grocery, and on or
about March 1, 1920, he employed W. D. Swaim, an
attorney, to assist him in procuring a patent upon his
device. An attorney in Washington was also employed,
who, after some correspondence between the parties,
secured the patent. Swaim carried on the correspond-
ence in behalf of Martin. The latter paid Swaim on dif-

ferent occasions the sum required to procure an attorney to obtain the patent, and Swaim paid all of this money to the patent attorney at Washington. A corporation was organized on February 9, 1921, to be known as the Little Rock Gro-See-O Company, for the purpose of operating trucks or moving groceries under the Martin patent. Swaim attended to the legal end of organizing the corporation, and received in consideration therefor stock in the corporation in the amount of $250. The corporation was capitalized for $100,000. A Mr. Hoffman and Martin put in one truck and one store for $5,000 in stock. They were allowed an additional $3,500 in stock for the city rights in the patent to Pulaski County and the cities thereof. Mr. Swaim was one of the directors.

The company did not make a success financially, and its creditors began to threaten suit. Swaim, acting for the corporation, had sold $1,000 in stock to C. W. Clement and had taken his note therefor. $3,000 in stock had been sold to E. B. Plummer, and Plummer had given to Martin a deed to six lots in Carlisle, Ark., valued at $4,500, upon which there was a mortgage for $1,500. On the 29th day of June, 1921, C. W. Martin and his wife executed a deed to these lots to W. D. Swaim for a consideration of $4,500, and it was provided in the deed that Swaim should assume the mortgage indebtedness of $1,500 on the property.

C. W. Martin admitted that he executed an instrument in writing in favor of W. D. Swaim, but says that he did not know that the instrument in question was a deed, but supposed it to be a mortgage on the property, which would be used by Swaim in securing the creditors of the corporation. According to the testimony of Martin, he was greatly interested in the success of the corporation, and executed the mortgage on the lots in question to Swaim in order to secure its creditors and to prevent them from suing and otherwise embarrassing the corporation. According to his testimony, Swaim rep-

resented to him that this would be the effect of the instrument which he was asked to execute, and, on account of the fact that Swaim had been his legal adviser throughout the whole proceedings, he had unlimited confidence in him, and signed the instrument in question without examining it. Subsequently he ascertained that the instrument in question was a warranty deed executed to Swaim absolutely, and that it in no manner protected the corporation from its creditors. When Martin ascertained this to be the effect of the instrument, he demanded its return from Swaim. Swaim refused to return it; hence this lawsuit.

According to the testimony of W. D. Swaim, the deed was intended by the parties to be an absolute deed, and it was given to him by Martin in payment for legal services performed in securing the patent to the moving grocery and in organizing and acting as attorney for a corporation to operate said patent in the city of Little Rock. Swaim carried on all the correspondence with the patent attorney at Washington, and paid him all of the fees that Martin paid to him for securing the patent. Swaim drew up the articles of incorporation for the moving grocery concern, and was given $250 of paid-up stock for his services in that behalf.

In the latter part of June, 1921, Swaim and other directors indorsed the corporation's note for $2,000. They did this because the corporation had become financially embarrassed, and the board of directors could not, or would not, do anything towards the satisfaction of its creditors. C. W. Clement had purchased $1,000 worth of stock in the corporation, and had given his notes for it. He soon became dissatisfied, and demanded his notes back. Martin told Swaim that Clement was his groceryman, and that if he would give him back his notes he would deed him his Carlisle property. The Carlisle property was subsequently conveyed to Swaim in consideration of his returning to Clement his notes for $1,000 and for other legal services that he performed for the moving grocery corporation.

Martin, on the other hand, was equally positive that he was conveying the property to Swaim in trust to be used in protecting the corporation against its creditors. Other facts will be stated in the opinion.

The chancellor found that, as between Martin and Swaim, the deed of the former to the latter to the Carlisle property should be set aside, but also found that Anderson was a *bona fide* purchaser, for value, of the property. Hence it was decreed that Martin should have a judgment against Swaim for $2,000, which was found to be the value of the property in suit, less the $1,500 mortgage on it, and certain personal property which had been paid by Anderson to Swaim for the purchase price of the property, and which had been impounded in the chancery court, was ordered sold and the proceeds to be applied towards the payment of the $2,000.

The defendant Swaim has duly prosecuted an appeal to this court.

*Wallace Townsend,* for appellant.

The decree is contrary to the evidence and in disregard of the settlement by the parties of the whole matter. The deed to appellant was duly made for an adequate consideration rendered, and there was no fraud in its procurement. 4 Ark. 302; *Holt* v. *Moore,* 37 Ark. 145. No fraud was proved, and the chancellor's findings are clearly against the preponderance of the testimony, and should be set aside. 31 Ark. 85; 102 Ark. 658; 102 Ark. 383; 104 Ark. 475. The testimony shows the agreement of settlement made and that appellant was ready, able and willing to perform it, which is conclusive of the whole matter, and the suit should have been dismissed in accordance therewith. 117 Ark. 504; 120 Ark. 389; 111 Ark. 514; 75 Ark. 266; 101 Ark. 335. Under any construction appellee was only entitled to recover the amount agreed on, $200.

*Trimble & Trimble,* for appellee.

Hart, J., (after stating the facts). The procuring of the conveyance of the Carlisle property from Martin

to Swaim was during the existence of the relation of attorney and client. In such cases the burden is upon the attorney of proving the fairness and equity of the transaction and the adequacy of the consideration, and, upon his failure to make such proof, a court of equity will treat the case as one of constructive fraud. The reason is that the relation of client and attorney is one of trust and confidence requiring a high degree of fidelity and good faith. *Thweatt* v. *Freeman,* 73 Ark. 575, and *Mc-Millan* v. *Brookfield,* 150 Ark. 518.

The rule that an attorney who contracts with his client has the burden of proving that no advantage has been taken of the situation of the latter, is not restricted to contracts or dealings with respect to the rights or property in controversy in the particular proceeding in which the attorney is acting for the client, but it may extend to other transactions and contracts, where the relationship may be presumed to give the attorney some advantage over the client.

It appears from the record in this case that Swaim acted throughout the whole proceedings as the attorney and confidential adviser of Martin. The rule of equity which casts upon the attorney the burden of showing perfect fairness on his part in all his dealings with his client is based upon the consideration that the confidential relations existing between the parties is such that the attorney has it in his power to avail himself of his influence over his client, and of the sense of dependence which the latter has in him, and of the confidence which the relation always imposes to a greater or less extent.

In the instant case both Martin and his wife testified that the deed to the Carlisle property was executed in order to protect the wholesale grocers who were giving credit to the moving grocery corporation, and thereby enable that corporation to continue in business. They say that it was expressly understood that, after the debts were paid, the instrument in question would be returned to them. Martin expressly denied that any part of the

consideration was that he should return to Clement his notes given for stock in the moving grocery corporation.

In this respect he was corroborated by the testimony of Clement. Clement testified that he purchased stock through the representations of Swaim, and that he obtained the return of his notes by employing an attorney for that purpose. Swaim was paid in stock for organizing the corporation. He was paid for his services in securing the patent, and it does not make any difference that he paid all the amounts received by him for this purpose to the Washington attorney, who, in reality, appeared before the department and obtained the patent. The only other service performed by Swaim was to act in conjunction with the other directors in getting the creditors to delay bringing suit against the moving grocery corporation for the collection of their debts.

The chancellor found the issues in this respect against the attorney, and it cannot be said that his finding is against the preponderance of the evidence.

Again, it is claimed that, after the suit was brought by Martin against Swaim, Martin gave a written order for the dismissal of the suit. This order, however, was conditioned upon the payment to him of $200 by Swaim, and the latter represented to him that he had the money in a bank in the city of Little Rock for that purpose. The evidence showed that he did not have anything like that amount to his credit in the bank at that time. It is true that Swaim made a tender of the $200 in court, but it was too late to avail him at that time. He did not have the money in the bank at the time he procured Martin to sign the order for the dismissal of the case, and it was too late for him to get the money after Martin discovered that he did not have the money in bank and recalled his order of dismissal. In this respect the finding of the chancellor was also against Swaim, and it cannot be said that his finding is against the preponderance of the evidence and therefore should be overturned on appeal.

Martin has taken a cross-appeal, and but little need be said on this branch of the case. The evidence shows that Anderson was an innocent purchaser for value of the Carlisle property from Swaim. This seems to be conceded by counsel for Martin; but they contend that the court erred in finding the value of the Carlisle property to be only $2,000 in excess of the mortgage indebtedness of $1,500 upon it. They point to the fact that several witnesses testified that the property was worth from $4,500 to $5,000. It appears, however, that the property is rented for only $30 per month, and, when this and other facts and circumstances introduced in evidence are considered, we do not think that the chancellor erred in rendering judgment in favor of Martin against Swaim for only $2,000.

It follows that the decree will be affirmed.