JERRY L. CARTER ET AL v. CLEVE ZACHARY ET AL.

5-4227                          418 S. W. 2d 787

Opinion delivered October 2, 1967

*U. A. Gentry, J. Patrick Reilly* and *Mike J. Etoch,* for appellants.

*George K. Cracraft, John L. Anderson* and *David Solomon,* for appellees

CARLETON HARRIS, Chief Justice. This litigation is quite complicated. On February 1, 1960, Cleve Zachary and wife went to the store of Abe J. Davidson in Marvell, Arkansas, and executed a promissory note in the amount of $22,794.04 to Davidson, with interest at the rate of 8% per annum. The purpose of the note was to satisfy an indebtedness due Davidson by Ellis McKissic and wife, the McKissic indebtedness having accumulated over a period of several years.

In March, 1957, McKissic had given a real estate deed of trust to Davidson to secure a $5,000.00 note, this debt being due in November 1957; in October, 1957, a note executed by McKissic in favor of Helena Federal Savings and Loan Association, had been purchased by Davidson for $13,240.15, this note being due in November, 1957. In December, 1957, McKissic executed a note to Davidson in the amount of $18,905.45, with interest at the rate of 10%, due February 28, 1958. This note was endorsed by Zachary. By the end of 1959, only a minimal amount had been paid, and, after the adding of interest, McKissic's balance was $20,722.05. In January, 1960, an additional amount of $2,072.00 was added, making a grand total of $22,794.05.[1] The recitation in this paragraph relates the facts leading to the signing of the note from Zachary to Davidson in February, 1960.

On the same day, in Davidson's office, McKissic and wife executed a quitclaim deed to Zachary for 160 acres of land, being McKissic's farm. Zachary then executed an agreement to reconvey the lands to McKissic upon the repayment by the latter of the indebtedness, plus interest. The agreement also provided for McKissic to pay

---

[1] The figure ".04" is used at times, while ".05" is also used.

all taxes, and to repay any further amounts loaned by Zachary, together with interest. Also, on this same date, McKissic and wife acknowledged that the $22,794.04 was the correct amount that they owed, and they signed a statement recognizing that they were indebted to Zachary in that amount. In January, 1963, Zachary made the final payment to Davidson on the note (that he had signed in behalf of McKissic), the total amount including interest being $27,505.18. Shortly thereafter, Zachary notified McKissic to quit the premises; however, McKissic ignored the notice and stayed on.

In September, 1963, Zachary executed an "Offer and Acceptance" with appellant, Jerry L. Carter, for sale of the McKissic lands for the sum of $26,000.00, the sale to be closed by December 1, 1963, and, since McKissic remained on the property, Zachary instituted an unlawful detainer action against McKissic in January, 1964. In August, 1964, Carter was granted leave by the court to file an intervention, and he sought to require Zachary and wife to specifically perform the agreement to sell him the McKissic lands, and asked in the alternative, that he be awarded damages against Zachary. Zachary answered the intervention with a general denial. In March, 1965, McKissic amended his complaint, asserting that the deed had been given as a mortgage, and further alleging that Zachary was guilty of usury. In May[2], McKissic instituted a cross-complaint against Davidson, contending that the latter had made usurious charges. Davidson answered with a general denial, and, the cause having been transferred to equity, the case was heard by the Chancery Court in November, 1965. After hearing the evidence, the court found:

1. That McKissic had failed to prove the allegations of usury against Davidson, and dismissed that complaint.

_____

[2]There is no explanation of why these various pleadings were filed so long after the original suit was commenced.

2. The intervention of Carter was dismissed.

3. The quitclaim deed from McKissic to Zachary, together with the agreement to reconvey from Zachary to McKissic, was intended by all parties in interest to be:

"a mortgage with right of redemption given to secure a debt owed by the Defendant to the Plaintiff, Cleve Zachary, in the sum of $22,794.05, which debt bore interest at the rate of 10% per annum until paid; that said lien was also given to secure any and all other advances made by Cleve Zachary to Ellis McKissic during the period of redemption; that said period of redemption had not expired at the commencement of this action.

"5. That up to and including January 14th, 1963, Cleve Zachary advanced additional sums to the Defendant in such an amount that said indebtedness aggregated on that date, the total sum of $27,505.18; that same is now in default; that the Defendant is indebted to the Plaintiff for his principal and interest in the aggregate sum up to this date in the aggregate sum of $37,516.66.

"6. The Court further finds that Cleve Zachary, as Mortgagee in possession of the properties, has paid all taxes and assessments due on said lands for the years 1962, 1963 and 1964, in the total sum of $758.24, and has been compelled to pay premiums of insurance upon the improvements thereon in the sum of $216.58."

The court then made a finding that McKissic was entitled to a credit for the reasonable rental value of the lands, which was found to be $2,040.00 per year, or a total amount of $8,120.00, and was likewise entitled to a further credit of $834.68. Judgment was thereupon entered for Zachary against McKissic in the amount of $29,536.80, and the court directed that if this amount, together with costs, was not paid within 60 days, the property should be sold at public sale. From the decree so entered, Carter appeals from the dismissal of his intervention against Zachary, and McKissic appeals from

that portion of the court's order holding "that there was no usury in any of the transactions involved in said cause and denying to the defendant, Ellis McKissic, any relief either against the plaintiff, Cleve Zachary, or the third-party defendant, Abe J. Davidson."

We proceed to a discussion of each of these contentions.

1. *Was the February, 1960, deed from the McKissics to the Zacharys intended as a mortgage?* The Zacharys have not appealed from the court's decision holding that the deed, in effect, was a mortgage, and this question is appealed only by Carter, who, of course, cannot prevail in his prayer for specific performance, unless the Zacharys owned the property.

Carter asserts that the deed given on February 1, 1960, conveyed the lands to Zachary, and that McKissic did not comply with the agreement to reconvey, and thus lost his right to claim the property. Evidence was offered by a witness, James Suitt, that McKissic had recognized Zachary's title, and had so advised Suitt when applying for a production loan. No point would be served in detailing the testimony of the various witnesses, for we are of the opinion that the testimony of Zachary and his wife justified the Chancellor in reaching his conclusion. It is well established that the question of whether a deed to realty (when absolute on its face, and construed together with a separate agreement to repurchase) amounts to a mortgage, or a conditional sale, is to be determined by the intention of the parties. *Ehrlich* v. *Castleberry*, 227 Ark. 426, 299 S. W. 2d 38. In *Newport* v. *Chandler*, 206 Ark. 974, 178 S. W. 2d 240, we said:

"It is unquestionably within the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of land, with a reservation to the vendor of a right to repurchase the

property at a fixed price and at a specific time. If such transaction is security for a debt, then it is a mortgage, otherwise, it is a conditional sale. ***"  .

The examination of Zachary during the trial reflects the following:

"Q. At the time that you all went down there to have the papers fixed, did you go down there with the intention of getting a deed for the property that day? '

A. No, sir, I didn't go down there with intentions of getting a deed then."

Zachary stated that the deed was taken for security.; Annie Zachary testified likewise. We think it is clear that the deed was intended as a mortgage.

2. *Was Carter entitled to specific performance, or in the alternative, to damages from Zachary?* The testimony reflects that on September 5, 1963, Zachary, acting on advice of counsel, agreed to convey merchantable title to Carter for $26,000.00, subject to good title, and Carter gave Zachary a check in the amount of $500.00 as earnest money.[3] There is evidence that Zachary thought, and with good reason, that McKissic had abandoned his claim to the farm. Although we feel that the record supports the view that Zachary acted in good faith in offering to sell the lands to Carter, there is no point in reviewing the testimony, since we do not decide this point on that premise. Nonetheless, we do not think that Carter is entitled to damages. Appellant's claim in this respect is based on the difference in the contract price and the market value of the land; under the contract, he would have purchased the lands for $26,000.00, the agreemnt reciting that the transaction would be closed by December 1, 1963. The only evidence offered by appellant as to damages was his own testimony, and this was not at all forceful. When asked by his attorney

[3]The check was never cashed, and was returned to this appellant.

as to the fair market value of the land on December 1, 1963, Carter replied, *"I don't really know* [our emphasis]. I was offered $32,000.00 for it prior to that and I didn't take it.'"⁴ It will be noted that appellant admitted that he did not know the value of the land on December 1, 1963, and the purported purchasers were not called upon to testify. The testimony about the offer of $32,000.00, if competent otherwise, certainly was hearsay evidence. This was all the evidence relative to damages, and could hardly support such an award. For that matter, the testimony of Carter, since appellant is an interested party, does not stand under the law as uncontradicted, and the court was not required to accept the testimony as correct. *McDonald* v. *The Olla State Bank*, 192 Ark. 603, 93 S. W. 2d 325. Appellant apparently recognizes that his proof is inadequate, for he closes his brief by stating that if specific performance of the contract is now impossible, he "is entitled to damages for breach of the contract, and that the case must be remanded to Chancery Court in order that those damages may be determined." As a rule, Chancery cases are developed completely on trial,⁵ and a final determination is made in this court on the record presented. We rarely remand a case simply to develop proof on one phase, where that proof could have been offered at the original trial.

3. *Is McKissic entitled to relief from Zachary because of usury?* McKissic contends that usurious interest was charged by Davidson, and that Zachary, as a volunteer, in settling this indebtedness, paid these usurious charges without first ascertaining the accuracy of McKissic's account with Davidson. It is admitted that Zachary did not know of any usurious or improper charge, but it is contended that he made no inquiry of

---

⁴The court originally sustained objection to the testimony concerning an offer, but subsequently permitted it. Later, Carter testified that the property had increased in value by March of 1964 to $35,000.00.

⁵Carter's pleading sought $10,000.00 damages.

McKissic as to the correct amount, and therefore, Zachary is not entitled to reimbursement.

In the first place, we think the evidence is heavily against this appellant's contention. One clearly gains the impression from reading this record that Zachary assumed this indebtedness purely as an act of friendship to McKissic, and the evidence reflects that Zachary was entirely willing, before the suit was filed, for McKissic to pay the indebtedness assumed without interest being paid to the former. It is difficult to visualize any person assuming a debt of another of nearly $23,000.00 (aside from the interest that would have to be paid) without first being requested to do so, and further, without ascertaining from that person the proper amount of the debt. Such a transaction, though possible, is contrary to human experience. We think logic supports the testimony offered that these parties met at the office of Davidson, and entered into the transaction. Certainly, the record discloses a written acknowledgment by McKissic that he owed $22,794.04, the amount for which Zachary executed the note to Davidson. In *Lowe* v. *Walker*, 77 Ark. 103, 91 S. W. 22, Walker made a loan to Lowe to enable the latter to pay off a debt due to a Mrs. Rice. Thereafter, Lowe raised the issue of usury. Walker testified that he had no notice of the usury though Lowe testified to the contrary. The Chancellor found for Walker, and Lowe appealed. In affirming the Chancellor, this court, through Justice McCulloch, said:

"Appellee was not affected by usury in the contract between Lowe and Mrs. Rice. Conceding that the debt was tainted with usury, Lowe elected to pay it, and procured its payment by appellee. He cannot defeat his liability to appellee for the money because the original debt to Mrs. Rice which it extinguished was tainted with usury."

There is yet another complete defense, but it will be discussed under the next heading.

4. *Is McKissic entitled to relief from Davidson because of usury?* Let it be remembered that the burden of proving usury is on the one who alleges it. Let it further be remembered that McKissic never raised any claim of usury until March, 1965, when, in an amendment to his answer, he alleged usury against Zachary, and subsequently in May, the same contention was raised against Davidson in a third party complaint. Without discussing the testimony on this point, some of which was uncertain and confusing, it is sufficient to state that any usurious transactions are barred by the statute of limitations.[6] The last transaction occurred on February 1, 1960, when Zachary settled McKissic's indebtedness by executing the note to Davidson. The last note given by McKissic himself to Davidson occurred on December 10, 1957, when he executed his note in the amount of $18,905.45. McKissic's contention that the statute of limitations does not apply is based on his assertion that fraud was practiced upon him, but there is no proof of this allegation in the record. There is no evidence of concealment, or fraudulent acts. In fact, one item which is alleged to constitute usury is the amount of $2,072.00, which was added to the account in January of 1960, and which clearly appears in writing for anyone to see. McKissic stated that he never did see any of the instruments or papers, and said that he did not know he had signed a quitclaim deed;[7] that Davidson kept these papers for him, but there is no evidence that McKissic even asked to see any instruments or the account, or that he made any inquiry whatsoever. In *Williams* v. *Purdy,* 223 Ark. 275, 265 S. W. 2d 534, we stated that mere ignorance of one's rights does not

[6]Ark .Stat. Ann. § 37-206 (Repl. 1962) lists the actions which must be brought in three years, and Ark. Stat. Ann. § 37-209 (Repl. 1962) sets out those that must be commenced within five years after the cause of action shall accrue. It is immaterial here whether the three year statute or the five year statute is applicable.

[7]McKissic also testified that he did not know that Zachary had executed the note assuming his (McKissic's) indebtedness, and did not know that Zachary had ever endorsed his note.

prevent the operation of the statute of limitations; in the event there are affirmative and fraudulent acts of concealment, the statute commences to run when the fraud is discovered. McKissic had been dealing with Davidson for years, and part of his claim of usury dates back for a long period of time. Yet, no contention along this line was made until May, 1965, more than fifteen months after Zachary had instituted suit to obtain possession of the lands in question.

On the whole case, we are unable to say that the Chancellor's findings were against the preponderance of the evidence.

Affirmed.