752

James RUTH and Selma RUTH, his wife *v.*
J. B. LITES and Virginia C. LITES, his wife

CA 79-141                                    590 S.W. 2d 322

Opinion delivered November 14, 1979
Rehearing denied December 12, 1979
Released for publication December 12, 1979

*Eugene Hunt*, for appellants.

*Eilbott, Smith, Eilbott & Humphries*, for appellees.

JAMES H. PILKINTON, Judge. On September 5, 1955, James Ruth and wife were the owners of the Northeast Quarter of the Northwest Quarter (NE ¼ NW ¼) of Section Twenty (20), Township Six (6) South, Range Twenty-Six (26) West, in Grant County, Arkansas, containing 40 acres,

more or less. On that date they borrowed $1,055.00 from Dr. L. Routen and wife. Mr. and Mrs. Ruth executed a warranty deed to the Routens conveying this land. However, the parties to that transaction also executed a Sales Agreement under which the Ruths would be permitted to repurchase the land; and in connection with this agreement, Mr. and Mrs. Ruth executed an installment note for $1,050.00 in favor of the Routens.

By November 4, 1960, the Ruths were in serious default under the terms of the note and repurchase agreement. Dr. and Mrs. Routen were demanding full payment of the principal and interest then due totaling $1,253.73 which the Ruths could not pay. They were threatened with eviction.

On January 12, 1961, J. B. Lites and wife paid $1,264.30, the amount then due by the Ruths, to Dr. and Mrs. Routen; and the Routens conveyed the forty acres to Mr. and Mrs. Lites, who were friends of Mr. and Mrs. Ruth and resided near them. In connection with transaction, Mr. and Mrs. Lites executed a Sales Agreement under which Mr. and Mrs. Ruth would be permitted to repurchase the land from them within a two year period on the terms and conditions set out in such instrument and in a promissory note, dated January 12, 1963. The Ruths continued to reside on the land. Mr. Lites recorded the deed, and paid the back taxes on the land. He also had the property transferred to his name on the tax books of Grant County, and has paid the taxes each year since 1961.

The Ruths made no payments on the note to Mr. and Mrs. Lites, and made no effort to repurchase the land prior to January 12, 1963. In fact they made no real effort to do anything about reacquiring title to the property until this suit was filed on September 12, 1973, a lapse of over ten years.

In bringing this suit, Mr. and Mrs. Ruth alleged they were indebted to Mr. and Mrs. Lites, and claimed that the deed they executed to the Lites in 1961 should be declared a mortgage. They seek to redeem the land by paying whatever amount is now due Mr. and Mrs. Lites. An answer was filed denying the allegations of the complaint. The answer also

alleged that any agreement of repurchase between the parties had expired on January 12, 1963, and that the Ruths were barred by laches from attempting to enforce the repurchase agreement at this late date. The Lites later filed an amended answer and requested that title to the land be quieted in them, and for a Writ of Possession inasmuch as the Ruths were still living on the land.

After an extensive trial, the Chancery Court ruled that the warranty deed executed by L. Routen and wife to J. B. Lites and Virginia C. Lites, his wife, dated January 12, 1961, was an absolute conveyance and not a mortgage; that the Ruths had failed to comply with the terms of a separate agreement to repurchase the land from the Lites; that Mr. and Mrs. Ruth have no right, title or interest in the property. The complaint was dismissed. The Ruths have appealed and this case has been assigned to the Arkansas Court of Appeals pursuant to Rule 29(3).

Two issues are presented on appeal, (1) whether the deed dated January 12, 1961, constitutes a mortgage, and (2) if it was in fact an equitable mortgage, whether appellants are barred by laches from redeeming the land.

The general doctrine prevails in this state that a grantor may show that a deed absolute on its face was intended only to be security for the payment of a debt and thus a mortgage. *Hill* v. *Day*, 231 Ark. 550, 331 S.W. 2d 38 (1960).

Whether any particular transaction does thus amount to a mortgage or a sale with a contract to repurchase must, to a large extent, depend upon its own circumstances. The question ultimately turns, in all cases, upon the real intention of the parties, as shown by the writings or as disclosed by extrinsic evidence. The rule is undisputed that to show a deed is not an absolute conveyance, but was intended to be a mortgage to secure a debt, the evidence must be clear, satisfactory and convincing. *Matthews* v. *Stevens*, 163 Ark. 157, 259 S.W. 736 (1924). In practice the line of demarcation between a mortgage and a sale with right of repurchase is shadowy, and it is frequently a matter of great difficulty to determine to which category a given transaction belongs. In

reviewing the decisions of courts of chancery on questions of this character, great weight should be given to the opinion of the trial court as the Chancellor may be apprised of the existence of circumstances which but dimly appear to us from an examination of the record alone. *Ehrlich* v. *Castleberry*, 227 Ark. 426 at 431, 299 S.W. 2d 38 (1957). The trial court had an intimate knowledge of this case and of the character and situation of the parties. The learned chancellor found that the instrument, in light of the attendant circumstances and the evidence adduced, was in fact an absolute deed of conveyance, and was not a mortgage. The trial court concluded that this was the intention of the parties, and we are unable to say, after a careful consideration of the record before us, that the chancery court has wrongly decided that issue. However, there is one modification wihch must be made in the decree of the trial court. The testimony is undisputed that Mr. and Mrs. Lites have permitted Mr. and Mrs. Ruth to continue to live in the house on the premises. In fact, Mr. Lites testified that they had agreed, many years ago, that Mr. and Mrs. Ruth might make their home there as long as they live and told them so. Mr. Lites expressed the agreement in the following words:

"Q. You testified, that you made, "a gentleman's agreement", to let him live there.

A. We did.

Q. Why did you do that?

A. Well, it's been brought out very vivid, that we have been friends all down through the years, and I didn't have malice in my heart to want to put him out of a home. And when we made this agreement, that was the agreement that he had the two years to pay it back and, if he didn't the property, in turn, would be mine. "If you do that and don't pay it off, you can have a home as long as you live there, and I will not put you off".

It is evident that Mr. and Mrs. Ruth relied on that understanding, and such agreement may explain why appel-

lants did not pay the note and comply with the agreement to repurchase. In any event, equity requires Mr. and Mrs. Lites to honor their agreement and permit Mr. and Mrs. Ruth to have a home on this land as long as either of them lives and desires to reside there. The statute of frauds was not raised as a defense to such agreement.

The decree of the chancery court is modified accordingly and, as so modified, is affirmed. The case is remanded for entry of a modified decree consistent with this opinion.

Supplemental Opinion on Denial of Rehearing
delivered December 12, 1979

The record in this case disclosed that appellees had promised appellants a home on the forty acres of land in question as long as appellants lived in event they could not repay the debt, and appellees retained the land. It was evident to this court on appeal that Mr. and Mrs. Ruth relied on that understanding, and the existence of such an agreement may explain why appellants did not pay the note and comply with the agreement for repurchase. In any event, in considering this appeal de novo, we held that equity required appellees, under the circumstances, to honor their agreement and permit Mr. and Mrs. Ruth to retain a home on this land as long as either of them lives and desire to reside there. As so modified, the decree of the Chancery Court was affirmed; and the case was remanded to the trial court for entry of a final decree not inconsistent with our opinion.

Appellees have now filed a petition for rehearing claiming that the original opinion of this court should be clarified to declare definitely that the rights of appellants to reside on the land is confined to the dwelling, and an appropriate small amount of land only immediately surrounding the house.

Appellees certainly know what they promised the appellants. If any dispute remains between the parties, or should arise later, the Chancellor would be in a better position to deal with such matters than this court, and the Chancery Court should do so first.

The present record before us does not fully disclose how much of this land is being used by appellants, whether the land is farm land, timber land, or both. The record is silent as to the exact location of the dwelling on the land, whether the dwelling has access, whether the home site is fenced, and many other details which a court would need in order to pass on the suggested items of possible future dispute which might arise.

We view our opinion as clear, and the mandate to be issued on it as sufficient in scope to enable the trial court to properly dispose of any issues which might arise between the parties in the future.

Rehearing denied.