Opal NELSON *v*. Winton Ray NELSON
and Ernest NELSON

79-166                                    590 S.W. 2d 293

Opinion delivered December 10, 1979
(In Banc)

354

*Hardin, Jesson & Dawson,* for appellant.

*Donald Goodner,* for appellees.

JOHN I. PURTLE, Justice. Appellant was granted a divorce on the ground of general indignities. The bulk of the

parties' real estate holdings was in the name of the husband. The court granted the wife a life estate in one-third of this realty. She was also granted one-third interest in a considerable amount of personal property to which she claimed joint ownership. Her appeal is on the grounds that the court should have found the real and personal property to be jointly owned and she should have received one-half interest in it.

Appellant alleges the court erred in failing to find that the house and lot in the city were owned by the parties subject to an equitable mortgage in favor of the father of the husband; that the other real estate should have been declared joint property; that it was error to give her one-third interest for life in the property alleged to be owned jointly by the parties; that Ark. Stat. Ann. § 34-1214 (Repl. 1962) is unconstitutional; that the court erred in determining ownership of other personal property; that the attorney's fee allowed to appellant was inadequate; and that appellant should have been awarded alimony. We agree with appellant that the residence occupied by appellant and appellee was owned by them subject to an equitable mortgage; that the 543-acre farm was joint property; and that the court erred in determining ownership of certain personal property.

Appellant and appellee were married in 1944; they separated in 1977. All of the property, with minor exceptions, was acquired during the marriage. The appellant worked the farm until all the children were grown. During this time she drove a tractor, hauled hay, picked beans, hauled poles, and did general farm type labor in addition to keeping house, preparing meals, and performing all other normal duties of a housewife. After the youngest child was 18, appellant obtained part-time work in the city and later became employed full time as an attendant at the hospital in Waldron. Her salary of about $400 per month was used in the general family operation. The parties were separated for a period of time in 1973 and effected a reconciliation upon the agreement of the appellee-husband to purchase a home for her in town. At that time they were unable to pay cash for a home and it was purchased by Ernest Nelson and occupied by appellant and appellee. During at least part of this time Winton Ray Nel-

son, the husband, carried insurance and paid taxes on the property in his name. They jointly expended about $9,000 in improving the house in Waldron. They paid no rent to Ernest Nelson, nor did they pay interest or make any payment to him on the purchase of the house. When they were first married, the appellant's father gave them about 10 head of cattle to start their operation. These cattle, of course, are no longer in existence but they did form the nucleus for starting the cattle business.

Appellee's mother purchased the 80-acre farm, which was deeded to appellant and appellee after it was paid for from proceeds of the sale of timber from the purchased land. Part of the 543 acres was purchased by Ernest Nelson and subsequently deeded to Winton Ray Nelson only. There is no indication that the husband received an inheritance or other money with which to purchase any of this property. The land, farming equipment, and personal property were acquired through the proceeds of sales of cattle, timber, and other crops raised on the property. Of course, in later years part of the money appellant earned in her outside employment was used for family purposes. Needless to say, no record was kept of how much money each of the parties spent on any particular piece of property. It is undisputed that in the later years of this marriage appellee did most of the farming himself, including raising jackbeans which were the primary source of income for the family. It was appellant who planted the first crop of jackbeans, consisting of one acre. During her outside employment appellant contributed her money to the upkeep of the family and for repairs and improvements to the house on Elm Street.

There is no question but that the chancellor was justified in awarding the wife a divorce on the ground of general indignities. This matter is not argued on appeal and we will not prolong this opinion by setting out the circumstances which justify the wife being awarded the divorce.

We first consider the property located at 815 Elm Street in Waldron, Arkansas. The trial court found this property was owned by Ernest Nelson. Title to the property was taken in the name of Ernest Nelson. However, it was Winton

Ray and Opal who located the property and subsequently had Ernest purchase it. After the house was purchased, either Ernest or Winton Nelson prepared a note to be signed by appellant and appellee. Appellant refused to sign the note because she felt she had been promised a house in town if she would resume her marital relationship with appellee. She testified that her husband told her the house was theirs at the time they moved in. They continued to live in this house until the separation. Appellant still occupies the house at this time. After taking possession, they remodeled the house which included bricking the outside, repaneling the inside, laying carpet inside the house, replacing the roof, and other repairs. Part of the remodeling money came from appellant's outside employment and part of it came from the sale of timber on the 543 acres of land which is in appellee's name. None of the improvement costs were paid by Ernest Nelson.

At the trial Ernest Nelson testified that a $7,000 note was prepared for the signature of the parties and that is what he expected them to pay for the house. He had expected to receive $650 down payment and allow the balance of $7,000 to be paid out over a period of time. He stated he did not intend to charge any interest although the note mentioned 7%. The note was set up for annual payments of $500 commencing in March of 1974. He further acknowledged that he knew Winton and Opal were making improvements on the property at the time the improvements were being completed. Ernest Nelson lent money to his son on other occasions for the purpose of purchasing real estate and cattle. Usually title had been taken in the father's name until the loan was repaid. Title was then transferred to the son. Winton Ray Nelson's mother had loaned him money to purchase the 80-acre tract of land and when it was repaid, from the sale of timber, she deeded it to Winton Ray and Opal Nelson. The father paid for a portion of the 543 acres and held the title in his name until the loan was repaid, at which time he executed a deed to his son. The father further stated he did not change the insurance on the Elm Street property into his name until the divorce action was filed. He further admitted telling the insurance agent he was selling the Elm Street property to Winton Ray and Opal Nelson. Appellee admitted that while he and his wife were separated in 1973 she told

him that if he would buy her a home in town she would come back to him.. He then located the Elm Street property and agreed to purchase it. He did not have the money to pay for it but did persuade his father to buy it. He stated: ''We put the deed in his name because he did the paying.'' He further stated the transaction was not completed because his wife would not sign the papers. He also admitted paying the taxes and insurance at least a part of the time after its purchase. Appellee testified his father would have deeded the property to him at any time he paid his father $7,500.

It is well established that a court of equity will treat a deed, absolute in form, as a mortgage when it is executed for the loan of money or as security for a debt. A court of chancery is authorized to determine the real character of the transaction by the use of any competent evidence, either oral or written, which tends to show the true character of the instrument. Before a deed, absolute in form, may be declared a mortgage the evidence must be clear, unequivocal and convincing. In other words, the evidence must show the transaction was intended as a mortgage and this proof must be such as to satisfy a reasonable mind without hesitation. *Grimes* v. *Evans,* 225 Ark. 770, 285 S.W. 2d 510 (1956); *Ehrlich* v. *Castleberry,* 227 Ark. 426, 299 S.W. 2d 38 (1957); and *Dixon* v. *Dixon,* 210 Ark. 647, 197 S.W. 2d 43 (1946). When we consider, in the present case, that appellant and appellee went into possession of the property, paid insurance and taxes, made extensive repairs and remodeled the house, paid no rent to the holder of the title, and it was a condition of reconciliation, we have no hesitancy in finding this instrument was an equitable mortgage. We find this to be established by clear, cogent and convincing evidence. *Sturgis* v. *Hughes,* 206 Ark. 946, 178 S.W. 2d 236 (1944).

We next consider the ownership of the 543-acre farm. We have long held that a court has a right to divide property acquired through the joint efforts of the parties on an equitable basis. *Stephens* v. *Stephens,* 226 Ark. 219, 288 S.W. 2d 957 (1956). When the parties were married they did not own this property. It was acquired, during the marriage, through the joint efforts of the parties. We are not required to make a determination as to whether more money or effort was ex-

pended on the part of one party or the other in reaching this conclusion. For about 18 years all of the efforts of both parties were directed to the acquisition and operation of the farm. Both of them assisted in raising the children as well as doing all other duties necessary to the operation of the farm. After appellant became employed, outside the home, her money was used to pay household expenses, purchase groceries, and repair and refinish the house in Waldron. In discussing the matter of disposition of property in a divorce proceeding, when the property was held only in the husband's name, we stated in the case of *Williams* v. *Williams,* 186 Ark. 160, 52 S.W. 2d 971 (1932):

> . . . If appellee and appellant, by their joint work, labor and management, acquired the property, a court of equity would, even before the recent statutes, protect the wife's interest in the property.

It would not be equitable to divest appellant of all interest in this property, except for a life estate in one-third of it, after all the years she has labored and toiled with appellee in acquiring and retaining this property. It is obvious from the evidence that it was the joint efforts of the parties which acquired the land, and we hold it would be inequitable to deprive her of the legal and equitable ownership of one-half interest in this property.

We turn to the personal property question at this time. Appellant insists she should have been awarded a one-half interest in the following:

(1) 40 head of cattle, subject to existing loan to Ernest Nelson and the bank of Waldron
(2) A $15,000 check representing proceeds from the sale of jackbeans
(3) A $1500 checking account
(4) Farm equipment
(5) 50 tons of hay
(6) Other items of personal property

We think the law relating to ownership of personal property is the same as that cited in the previous point

relating to ownership of real property. The decree of the court awarded appellant ownership of a 1972 Mercury Comet automobile and the household furniture as well as the appliances accumulated during the marriage. She was also granted possession of the house in Waldron, with the consent of appellee. Winton Ray Nelson was awarded ownership of 70 head of cattle, acquired after the separation, and a 1978 Chevrolet 4-wheel drive pickup truck. Neither party raises any question on appeal about the vehicles or the household furnishings and appliances. Appellant does insist she had a one-half interest in the 70 head of cattle acquired by the appellee after the separation.

We do not find it necessary to treat the other points argued by appellant in view of our holding in this matter. The case will be remanded to the trial court with directions to declare the property at 815 Elm Street to be the joint property of the parties subject to an equitable mortgage in favor of Ernest Nelson in the amount of $7,650 to bear interest at the rate of 7% from the date of purchase in 1973. Unless otherwise directed by the trial court, the estate will be converted to one in common, subject to the above-mentioned mortgage. Possession of the Elm Street property will be awarded to appellant. All of the other property acquired by the parties up to the time of separation will be declared to be owned jointly by the parties. Any valid indebtedness against any of the property will likewise be the joint responsibility of the parties. The $15,000 check for proceeds of the sale of jackbeans is specifically declared to be jointly owned as is the $1,500 joint checking account. The property acquired by the appellee subsequent to the time of the separation is his separate property and the appellant has no interest in it, except such of the jointly held property which may have been used in the purchase of the after acquired property. In view of this opinion, we feel that any additional fees should be paid by the parties respectively. The costs of this appeal are to be assessed against the appellee. The case is reversed and remanded with directions to proceed in a manner consistent with the opinion expressed herein. We have not attempted to deal with every item of personal property because the trial court is in a much better position to make this determination. Ernest Nelson is entitled to be reimbursed

for the cost of taxes and insurance which he paid on the house and lot at 815 Elm Street. The trial court may find it necessary to hold an additional hearing and/or receive other evidence for the purpose of complying with this opinion.

Reversed and remanded.

HARRIS, C.J., not participating.