Fred E. DUVALL, et ux *v.* LAWS, SWAIN & MURDOCH, P.A.,
Ike Allen Laws, Jr., and Revere Corporation

CA 89-484                                    797 S.W.2d 474

Court of Appeals of Arkansas
En Banc
Opinion delivered October 24, 1990

*Peel and Eddy*, by: *James S. Dunham*, for appellant.

*Wright, Lindsey & Jennings*, for appellees.

JOHN E. JENNINGS, Judge. In 1982, appellant Fred Duvall was charged with theft in connection with the buying and selling of oil and gas leases. He asked Ike Allen Laws, Jr., the appellee, a Russellville lawyer, to represent him. The two had known each other since grade school.

Laws quoted Duvall a fee of $5,000.00. Duvall paid $2,498.00 but then he was unable to raise the balance. He and Laws entered into an agreement, which later became the subject matter of this lawsuit. Duvall and his wife executed a deed which purported to convey outright the mineral rights to 160 acres of land in Pope County. The deed was dated September 27, 1982 and recited a consideration of $5,000.00. Revenue stamps were purchased reflecting that amount. Also on September 27 Laws sent Duvall the following letter:

> This will acknowledge that you have on this date transferred to our firm certain minerals by mineral deed,

> representing our attorney's fee of Five Thousand Dollars
> ($5,000.00) to defend Fred E. Duvall in the State of
> Arkansas.v. Fred E. Duvall.
>
> This letter will serve as evidence of our agreement that you
> may repurchase these minerals at any time within one (1)
> year from the date of this letter upon payment in full of my
> said fee.

It is undisputed that the letter was received by Duvall. On October 5, 1982, the law firm sent Duvall an invoice showing a balance of $2,502.00. This was the last bill sent to Duvall.

During the summer of 1983, Duvall located a prospective purchaser for the mineral rights who was apparently willing to pay more than $30,000.00 for them. The transaction did not go through due to title problems. At trial, the testimony was conflicting as to whether Laws cooperated in the attempt to sell the mineral rights to the third party.

In 1987 Laws leased the mineral rights for $12,740.00. On June 28, 1988, Duvall sued Laws, alleging that their 1982 transaction ought to be construed as an equitable mortgage. The chancellor held that the transaction was a deed with an option to purchase and not an equitable mortgage. He nevertheless awarded Duvall judgment for $2,498.00. Duvall appeals the first holding; Laws cross appeals the second. We affirm on direct appeal and reverse on cross appeal.

On direct appeal, Duvall argues that the chancellor applied the wrong burden of proof and that his refusal to hold that the transaction was an equitable mortgage was clearly erroneous. The case is governed by two distinct sets of rules. In equity, a grantor may show that a deed, absolute on its face, was intended only to be security for the payment of a debt and thus was in actuality a mortgage. *Ruth* v. *Lites*, 267 Ark. 752, 590 S.W.2d 322 (1979); *Hill* v. *Day*, 231 Ark. 550, 331 S.W.2d 38 (1960). The burden of proving that the transaction was truly a mortgage rests upon the grantor because there is a presumption that the instrument is what it purports to be. *See Newport* v. *Chandler*, 206 Ark. 974, 178 S.W.2d 240 (1944); *Clerk-McWilliams Coal Co.* v. *Ward*, 185 Ark. 237, 47 S.W.2d 18 (1932); *Wensel* v. *Flatte*, 27 Ark. App. 5, 764 S.W.2d 616 (1989). The burden may

be met only by clear and convincing evidence. *Newport, supra*; *Clark-McWilliams Coal Co., supra*; *Nelson* v. *Nelson*, 267 Ark. 353, 590 S.W.2d 293 (1979). When a vendor, at the time of a sale, is indebted to a purchaser, and continues to be indebted after the sale, with the right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be considered in a court of equity as a mortgage. *Ehrlich* v. *Castleberry*, 227 Ark. 426, 299 S.W.2d 38 (1957); *Matthews* v. *Stevens*, 163 Ark. 157, 259 S.W. 736 (1924). On the other hand the parties may enter into a contract for the purchase and sale of land, with a reservation to the vendor of a right to repurchase the property at a fixed price and at a specific time. If such a transaction is security for a debt, then it is a mortgage—otherwise it is a sale. *Carter* v. *Zachary*, 243 Ark. 104, 418 S.W.2d 787 (1967); *Monaghan* v. *Davis*, 16 Ark. App. 258, 700 S.W.2d 375 (1985). The line of demarcation between the two has been said to be "shadowy." *Ehrlich, supra*; *Newport, supra*. The question whether a deed to realty, absolute on its face, when construed together with a separate agreement or option to repurchase by the grantor amounts to a mortgage or is a conditional sale, depends on the intention of the parties in the light of all attendant circumstances. *Lewis* v. *Miller*, 226 Ark. 560, 291 S.W.2d 255 (1956); *Ehrlich, supra*; *Monaghan, supra*. In reviewing the chancellor's determination on this issue, we are obliged to give great weight to his opinion. *Ehrlich, supra*; *Buffalo Stave & Lumber Co.* v. *Rice*, 187 Ark. 731, 62 S.W.2d 2 (1933).

While it is true that during his testimony, Laws said that Duvall never made any attempt to "pay the balance of the fee," there was also evidence from which the chancellor could have found that Duvall's failure to pay "the balance" for more than six years indicates his awareness that the transaction was an absolute conveyance. In *Newport* v. *Chandler*, 206 Ark. at 981, the court suggested that one test which may be helpful in determining whether a transaction is a mortgage or a conditional sale is to decide whether the grantee has the right to compel the grantor to pay the consideration named in the stipulation for reconveyance. In the case at bar it seems clear that Laws would not have been successful in a suit to compel the payment of "the balance" of his fee. In any event we cannot say that the chancellor's determination that the transaction was not intended

as a mortgage is clearly erroneous.

█ In contending that the chancellor applied the "wrong burden of proof," Duvall relies upon the principle that an attorney who enters into a business transaction with a client has the burden of proving the fairness and equity of that transaction and the adequacy of the consideration therefor. *Swaim* v. *Martin*, 158 Ark. 469, 251 S.W. 26 (1923); *Thweatt* v. *Freeman*, 73 Ark. 575, 84 S.W. 720 (1905). We agree that the principle is applicable to the case at bar. Once the chancellor found that the grantor had not met his burden of proving by clear and convincing evidence that the transaction was intended as a mortgage, the burden was then upon Laws to establish that he dealt fairly and justly with Fred Duvall. *Blake* v. *Denman*, 218 Ark. 351, 236 S.W.2d 433 (1951). In contending that the trial court applied the wrong burden, appellant relies on two remarks made by the chancellor.

> One of the problems in deciding this case that bothers me is the fact that the defendant is an attorney; [I] want to be very careful that he's not treated improperly one way or the other just because he's a lawyer.

> \* \* \*

> If I ruled otherwise it would be simply because Mr. Laws is an attorney whom I have never met or seen before as far as I know ever in my life or had any correspondence with him. And I don't think that's right either.

█ When the two statements are viewed in the context of the court's other remarks, we are not persuaded that they indicate the chancellor was unaware of the burden imposed on Laws by decision such as *Swaim*. It is not an incorrect statement of the law to say that a decision should not be made *solely* on the basis that one of the parties is a lawyer. "There is no absolute incapacity for dealing between client and attorney; and although transactions between them will be carefully scrutinized, yet those which are obviously fair and just will be upheld." *Blake* v. *Denman*, *supra*. In the case at bar there was evidence from which the trial court could find that mineral rights conveyed from Duvall to Laws were essentially without market value at the time of the conveyance. It was therefore not improper for the chancellor to find, as he clearly

did, that the transaction was fair to appellant, viewed from the time of its making.

Finally, if the chancellor was correct in holding that the transaction was an absolute conveyance, we can find no justification for upholding his award of damages to the appellant and that award must be reversed.

Affirmed on direct appeal and reversed on cross appeal.

WRIGHT, Acting C.J., and MAYFIELD J., dissent.

ERNIE E. WRIGHT, Acting Chief Judge, dissenting. In September 1982, appellant and his wife, residents of Pope County, found themselves in a vulnerable position. Appellant was under criminal indictment in Conway County and needed an attorney to defend him. At trial he was acquitted. Appellant's wife had been seriously ill and the couple owed various debts, including a civil judgment in Conway County, hospital bills approximating $90,000.00 and other debts. Appellant was unemployed as he had been caring for his sick wife. Their assets were exhausted except for some mineral interests. Appellant's wife died after the commencement of this suit.

Appellant made an agreement with attorney Ike Laws, Jr. to defend him in the criminal case for a fee of $5,000.00. Appellant could raise only half of the fee at the time of employment. Appellant told Laws he had some mineral interests he wanted to sell and would pay the balance of the fee upon sale of the mineral interests. However, very shortly after half of the fee was paid, Laws called appellant on the phone and suggested appellant deed the mineral interests to him to assure payment of the balance of the agreed fee, and suggested further that appellant's judgment creditors could attach and execute upon the mineral interests and deprive appellant of all benefits in the mineral interests.

In keeping with Laws' recommendation, appellant and his wife on September 27, 1982, executed a deed prepared by Laws conveying to the appellee law firm the mineral rights in 160 acres of land in Pope County. On that date or shortly thereafter Laws sent appellant the letter set out in the majority opinion.

When the letter was written, Laws had already received $2,498.00 on the fee and was owed a balance of $2,502.00.

However, the letter refers to the deed as "representing our attorney's fee of Five Thousand Dollars ($5,000.00)"

On October 5, 1982, some eight days after delivery of the deed to Laws, his office sent a statement to appellant reflecting a total fee of $5,000.00 in the criminal case, credits of $2,498.00 and a balance of $2,502.00 unpaid.

Laws gave testimony at the trial "so far as I'm concerned" the deed for the mineral interests was in settlement of the balance of the fee but that he gave appellant the right to have the minerals reconveyed upon payment of the balance within one year from date. However, during Laws' testimony with reference to a conversation he had with a Mr. Womack who was attempting in July 1983 to purchase for $30,000 the subject mineral interests, together with some 50 acres of additional mineral interests in which appellant and wife had an interest, he stated he told Mr. Womack his office had a deal with appellant and they wanted their name on the draft. In reference to his deposition, Laws admitted to the following at trial:

> Q "You stood to get your fee out of this?" And your answer was?
>
> A I stood to get what he still owed me on my fee.

The statement by appellee Laws was in direct conflict with his testimony at trial that the deed for the mineral interests was in settlement of the balance of the fee. The sale to Womack was never closed.

Appellant sought to employ attorney Ernie Witt to recover the mineral interests at least as early as July 1985. The evidence shows that attorney Cliff Hoofman had sent Laws a letter about appellant's claim for recovery of his mineral interests from Laws and Laws wrote Hoofman a letter in February 1988 in which he stated:

> Dear Cliff: I thought you might be interested in a computer check I ran on judgments against Fred DuVall. With these judgments against him, it is my opinion that he would not be able to keep the minerals he claims, even if he could get them. I thought this may be of some interest to you in determining the manner that you took employment.

The letter was written after Laws had in December 1987 entered into two oil and gas leases for the mineral interests for an up front consideration of $12,700.00. Laws also wrote attorney Hoofman in February 1988 and in referring to appellant, stated: "he had not made any attempt to pay a single penny on our fee since his trial." The statement is in conflict with appellees' contention the mineral deed settled the fee.

Appellant gave the following unrebutted testimony:

A   I went to Ike's office and asked him if I borrowed the money, could I pay him in full and he issued a challenge to me if I could find an attorney to represent me.

Q   Was this following the. . . was this still within the one year period?

A   Yes, that was within the one year period.

Q   What did he say?

A   He said, "You just do whatever you think you're big enough to do."

Appellant testified that he had leased the mineral interests in years past for figures from $40.00 to $50.00 per acre and this was not rebutted.

Appellant testified he went to Laws' office promptly after he got the letter concerning his right to have the minerals reconveyed to him and complained that the letter did not show he would only be required to pay $2,500.00, the unpaid part of the fee, to have the minerals reconveyed, and also complained that the letter did not show the agreement was that the $2,500.00 would be paid when he sold the mineral interests. He said Laws' response was:

He said it was necessary for him to word the letter like that. That that represented the full fee in case the judgment people came out . . . came after me and said that I overpaid him 110 acres of minerals for just $2,500.00.

The chancellor found that the deed from appellant and wife to the appellees for the mineral interests was not a security for the debt, but was an absolute conveyance.

In an effort to show the $2,502.00 balance of the fee was fair

consideration for the mineral interests appellees' witness Dale Braden, a fellow attorney and member of the Russellville Bar, who worked with Arkansas Oil and Gas Co., testified he offered "nothing" for the subject mineral interests in 1982. Of course, this had no significance for establishing the value of the mineral interests. There was no evidence any offer from him was solicited in 1982, and whether he offered "nothing" has no evidentiary value as to the market value. This witness admitted he paid Laws $129.00 per acre for a five-year lease on 80 acres of the mineral interests in 1987.

There are two reasons for reversing. First, when an attorney contracts with his client and litigation arises over the transaction, the attorney has the burden of proving that no advantage has been taken of the client. Appellant alleged that appellees' actions constituted a gross ethical breach of the duties a lawyer owes his client in an ongoing lawyer-client relationship. The reason for the rule is that the relation of attorney and client is one of trust and confidence requiring a high degree of fidelity and good faith. The burden is upon the attorney to prove the fairness and equity of the transaction and the adequacy of the consideration. *Swaim* v. *Martin*, 158 Ark. 469, 251 S.W. 26 (1923). It is apparent from the findings and rulings of the chancellor from the bench that he did not follow this rule. On appeal from chancery court we consider the case *de novo*, and render a judgment here which should have been rendered below, giving due deference to findings of fact by the chancellor. When the evidence as a whole is carefully weighed, it is apparent appellees failed to meet the burden of proving the transaction with appellant was fair and equitable. Appellees completely failed to present evidence of the market value of the mineral interests as of September 1982, the date of the deed. There is substantial evidence the value of the mineral interests greatly exceeded the amount of the balance of the fee. The court failed to make a finding as to the fairness of the transaction in keeping with *Swaim*. There is a total absence of evidence of negotiation between the parties as to the relative value of the minerals with relation to the balance of fee owed, and the testimony of Laws at trial was at variance with his own documentary evidence. His testimony sought to impeach his own documents and prior admissions. In *Bond* v. *Marlin*, 199 Ark. 806, 136 S.W.2d 460 (1940) the Arkansas Supreme Court reversed the

Union Chancery Court which had found against appellants in their suit to recover ownership of mineral interests, the deed for which was taken in the name of appellants' attorney, Marlin. The court upon review of the evidence on appeal held the appellee failed to meet the burden of proof required by *Swaim*. The appellant is entitled to cancellation of the mineral deed to appellees and other relief discussed later in this dissent.

Secondly, it is clear from the evidence appellee Laws continued to consider appellant still owed the unpaid balance on the agreed fee after the receipt of the mineral deed as evidenced by the bill sent to appellant, Laws' letter to attorney Hoofman, and some of Laws' testimony that appellant had not paid the balance of the fee owed. When the evidence is considered in its entirety it is clear the chancellor's finding the mineral deed to Laws was in effect a sale with no equitable security interest attached was clearly against the preponderance of the evidence. From the pronouncements of the chancellor it is clear he attached great significance to the fact that appellant gave testimony that the appellees owned the minerals subject to the letter giving appellant the right to repurchase. There is no dispute that appellees became vested with legal title, but when that is coupled with the right to repurchase for the balance of the fee owed the case comes clearly within the rule set out in *Monaghan* v. *Davis*, 16 Ark. App. 258, 700 S.W.2d 375 (1985). When the deed was delivered to appellees, appellant owed $2,502.00 fee balance. The evidence is abundantly clear, not only from the testimony of appellant, but from evidence flowing from Laws that appellant continued to owe the balance of the fee after delivery of the mineral deed. The letter from Laws to appellant, coupled with the rest of the evidence, nails down the fact that the deed was security for the balance of the fee. It was after litigation was in the offing that Laws' posture about the nature of the transaction changed and in his testimony he sought to change the meaning of the bill for the balance of the fee sent after receipt of the deed and to impeach his prior statements about appellant still owing the balance of the fee. It is undisputed that appellant had the right to reconveyance on payment of the fee balance. The fact the letter purported to limit that right to one year is of no consequence here as the transaction constituted an equitable mortgage that required foreclosure. Thus, the test in *Monaghan* is met. In that

case the court held that a deed coupled with an oral agreement to reconvey on payment of a debt constituted an equitable mortgage that can be disposed of only by foreclosure. In so holding the court said:

It is a well settled principle of equity jurisprudence in this state that where, at the time of sale, a vendor of land is indebted to the purchaser and continues to be indebted to him after the sale with the right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be construed by a court of equity as a mortgage. . . .

The foreclosure of a mortgage is ordinarily necessary in order to cut off the mortgagor's equity of redemption and to transfer absolute title to the mortgaged property, even in the case of absolute deeds intended as mortgages. 59 C.J.S. *Mortgages* § 486 (1949). *See also Baugh* v. *Taylor*, 184 Ark. 545, 42 S.W.2d 992 (1931), where the court stated:

The clause in the option contract making time of the essence thereof had the effect, perhaps, of waiving the right of redemption conferred by the statute, but did not dispose of the equity of redemption which ante- dates any statutory right of redemption. This equity can be disposed of only by foreclosure or a conveyance or by laches.

Clearly the rule in *Monaghan* is not confined to a situation where a loan is made, as the chancellor's pronouncements indicated, but includes other circumstances in which the grantor is indebted to the grantee.

In our *de novo* review on appeal from chancery we treat the pleadings as amended to conform with the proof as to issues tried by the implied consent of the parties, and we do so here. *Brown* v. *Imboden*, 28 Ark. App. 127, 771 S.W.2d 312 (1989); Ark. R. Civ. P. 15(b). In the case before us foreclosure of the equitable mortgage is not necessary as appellees have already received more than the debt and interest.

This case should be reversed and judgment entered in favor of appellant against appellees for $12,700.00 less $2,502.00 and

interest thereon from September 27, 1983. The mineral deed to appellee should be canceled, but appellant's mineral interests should be decreed subject to the rights of the two innocent purchasers of mineral leases who leased from appellees.

MAYFIELD, J., joins in dissent.