HICKS *v.* EARLY.

5-2734                                   357 S. W. 2d 647

Opinion delivered June 4, 1962.

*Ward & Lady,* for appellant.

*Frierson, Walker & Snellgrove,* for appellee.

CARLETON HARRIS, Chief Justice. This is a slander of title action. Appellant, A. A. Hicks, purchased roof-

ing materials from appellees, Southwestern Petroleum Company, Inc., a Texas corporation, and Lee Early, according to an allegation of the complaint, an agent and officer of the corporation,[1] to be delivered and used at 215 Clark Street, Nettleton, Arkansas. A dispute arose as to the amount Hicks owed appellees. On January 11, 1960, a materialman's lien was filed by appellees, claiming a lien in the amount of $47.02 upon "buildings and property of Mr. A. A. Hicks in Jonesboro, Arkansas, located at 705 Steele." According to the testimony of Mr. Hicks, in November or December of that year, he settled his indebtedness with appellees in the municipal court,[2] and requested the clerk of that court to tell appellees to satisfy the lien.

On January 17, 1961, appellant instituted his complaint in the Craighead County Chancery Court, alleging that the heretofore referred to lien had been filed by appellees, "with the corrupt and wrongful purpose and intention of discrediting the record title thereto in violation of Section 41-1935, Ark. Stats. 1947. The defendants knew they had no claim of any nature whatsoever that could possibly be a lien against the real property described. There has existed a bona fide disagreement between the parties hereto over payment for certain matrials purchased by plaintiff from defendants for use on real property located, at the time of purchase, in the city of Nettleton, Arkansas. That disagreement was settled in full to the satisfaction of all parties on November 5, 1960, at which time the plaintiff demanded that the lien wrongfully placed against his real property at 705 Steele, Jonesboro, Arkansas, be satisfied of record no later than November 15, 1960." Appellant then alleged that appellees had failed and refused to satisfy the lien, and that their wrongful acts had resulted in discrediting and clouding the title to his property at 705 Steele in

[1] The complaint alleges that the purchase was made from the Zone Company, a subsidiary of Southwestern Petroleum Company, Inc. This allegation was admitted to be true by appellees.

[2] The record does not reflect it, but apparently appellees obtained a judgment against appellant in that court.

Jonesboro; that he had suffered embarrassment, inconvenience, humiliation, and actual loss of money, and that the acts of the appellees had been wilful, wanton, and corrupt. Total damages were sought in the amount of $6,000.[3] The court was asked to cancel the lien, order the record satisfied, and grant judgment against appellees for the amount previously mentioned. Summons was served on the Secretary of State of Arkansas as agent for service for Early and Southwestern Petroleum Company.

Appellees appeared specially for the purpose of moving the court to quash the attempted service upon them, asserting they were not doing business or performing work in this state such as would subject them to this type of service. On hearing, the court overruled this motion, and after a motion to make the complaint more definite and certain, appellees filed their answer (reserving their objections to the jurisdiction of the court), admitting that Southwestern was the sole owner and operator of the Zone Company, but denying all other allegations. The cause was set for trial for July 18, 1961, and on the morning of that date, the lien was satisfied. After hearing the evidence, consisting of the testimony of Hicks, the chancery clerk, and the deposition of J. E. Hicks of Hillsboro, Illinois, a brother of appellant, the court subsequently entered its memorandum opinion, which included the following findings:

"The preponderance of the evidence shows that the lien was placed on the wrong property by mistake and not with any specific intent to injure the plaintiff or to disparage the title to his property. It was a mere collection procedure that was very loosely handled.

The Arkansas law is clear in that to sustain an action for slander of title the plaintiff must prove the defendant acted maliciously and in holding that the plaintiff in the instant case has failed to meet this burden

---

[3] By amendment to the complaint, this amount was increased to $8,275.00.

of proof it is unnecessary to rule on the question of damages and other issues raised by the plaintiff in his complaint. The defendant must prevail.''

In accordance with the findings therein, a decree was entered dismissing appellant's complaint for want of equity. From such decree, appellant brings this appeal.

As stated by the trial court, it is necessary, before appellant can prevail, that he establish that appellees acted with malice. *Sinclair Refining Company* v. *Jones,* 188 Ark. 1075, 70 S. W. 2d 562. This holding is in accord with the general rule. As stated in 53 C. J. S., § 274, P. 394:

''Malice is a necessary ingredient in order to entitle plaintiff to recover for slander of title. Indeed it has been said that malice is the gist of the action. Such malice, however, may be express or implied. The action cannot be maintained if the claim was asserted by defendant in good faith, and if the act complained of was founded on probable cause or was prompted by a reasonable belief, although the statement may have been false.''

Further, in § 278 [4 (f)]:

''Malice may not be inferred from a mistake of law honestly made. The fact that defendant did not have probable cause for believing in the validity of a claim asserted against plaintiff's property will not in itself establish his malice. The evidence of malice must support the reasonable inference that the representation not only was without legal justification or excuse, but was not innocently made.''

Appellant cites a statement contained in the *Sinclair* case, ''Where the assertions are known to be false by the one making them, malice may be inferred by the trier of fact'', and contends that the proof reflects that appellees knew at the time they filed the lien, that they had no claim whatsoever on his property located at 705 Steele Street in Jonesboro. The claim for damages, according to his evidence, is predicated upon the loss of a sale of

the Jonesboro property. He testified that his brother was willing to purchase the property for $13,000, but would not do so until the materialman's lien was satisfied; that his brother gave him thirty days (which extended the time of the offer to February 1, 1961) to obtain the satisfaction of the lien, but he was unable to do so. Hicks testified that no one else offered $13,000, and that he considered the property worth $10,000.

The deposition of J. E. Hicks, the brother, a resident of Hillsboro, Illinois, was offered in evidence. Hicks stated that he offered to purchase the property around the last of December for $13,000, and was ready, willing, and able to carry out the offer; that he did not purchase the property because he discovered a lien against it; that he was not presently willing (May 12, 1961), to renew the offer, even if the lien were released.

The fact that the lien was claimed on the wrong property does not establish malice. In *Coffman* v. *Henderson,* 63 So. 808 (Ala.), one of the leading cases on the subject of slander of title, the court said:

"But although false, yet if the claim was asserted by the defendant in good faith, an action will not lie against him for damages; otherwise every failure to maintain a title or lien claimed to or upon property, or every error of judgment or mistake made in the assertion of such claim, or suit brought to enforce it, however honestly and sincerely done, would subject a party to suit and mulct him in damages. *Hill* v. *Ward, supra.* In this class of matters, the extent of the penalty which the law inflicts upon an unsuccessful, honest disputant is to award costs to the opposing party, and that only when the controversy between them has proceeded to the point of and resulted in litigation. While malice, of course, cannot exist in legal contemplation unless the statement or claim was in fact false or untrue, yet, in order to constitute malice, it is seen that something more must be alleged and shown than the mere falsity of the statement or claim. Even though false, if the defendant had probable cause for believing his statement, there can

in law be no malice; and, though the fact that there was a want of probable cause for believing the statement is evidence of malice, it is not conclusive of its existence, nor its legal equivalent.''

In the instant litigation, a purchase of materials had been made; appellant did own property in Jonesboro, and mail was sent to the Steele address; in fact, notice that the lien had been filed was sent to this address. Appellees, of course, were entitled to claim a lien on the Nettleton property, where the materials were used, but the claim was made against the Jonesboro property. Under the circumstances, considering the lien was filed by an out of state concern, that Hicks lived in Jonesboro, and mail was directed to that location, it certainly would appear that the filing of the lien on the wrong property could have well been through inadvertence, rather than a calculated, deliberate, or malicious act. At any rate, appellant did not establish it to be otherwise. As stated by the Chancellor, the matter was ''loosely handled'' by appellees—but this does not prove malice.

Appellant vigorously argues that malice is shown by the fact that, though appellees had notice that the lien was filed on the wrong property, they still refused to release same until July 18, 1961. According to the testimony, Hicks settled the indebtedness by giving his check to the city clerk in November, 1960. Appellant stated that he requested the clerk to ''Please clear my records on my property''. Of course, there was no duty, or authority, upon the part of the city clerk, to satisfy the lien that had been filed. Appellant's next move was to institute his suit, which was filed on January 17th. At this time, he stated his cause of action, and we are unable to understand how subsequent events have any bearing on the question of malice. Be that as it may, the contention is answered completely in the case of *Coffman* v. *Henderson, supra,* in the following language of the court:

''The contention of appellant's counsel in this matter is best stated in his own words, found in his brief, to-

wit: 'The court will notice that this is not an action for damages for any filing of the notice of lien, regardless of whether the filing was wrongful or not. The complaint clearly states that the said T. M. Henderson (defendant) failed or refused to cancel said notice or declaration, or to remove the same from record, after being notified to do so, and, as a proximate consequence, the damage is averred. It is not the filing of the notice we complain of, but of the failure, wrongful failure, to cancel the notice of record after being notified to do so, when the complaint shows it was the duty of the defendant to have done so. * * * The complaint shows a duty owed by defendant to plaintiff, viz., the duty to remove the notice or cancel the same of record, because, as averred in the complaint, there was no indebtedness existing between the parties at the time the claim was filed, nothing on which to base the supposed lien, and because defendant had been notified to remove or cancel the same. * * * The breach of that duty is shown by the averment that the defendant failed to perform such duty after being notified to remove or cancel the notice. * * * The damages are averred to have been sustained as a proximate consequence of defendant's failure to perform the duty. * * * Looking at the substance, and not the form, of the allegations in the complaint, the source of the damages claimed was the filing of the claim or declaration for record by which act the defendant claimed a lien on the property in disparagement of plaintiff's title, rendering it unmarketable. If the positive act of the defendant in filing and having recorded such false claim (if that it was) of a mechanic's lien on plaintiff's property is not actionable (and it is not, as the authorities without dissent declare, unless it was maliciously done), then certainly his negative act in failing to cancel of record such claim or declaration would not be actionable.''

While it is not controlling in this litigation, it is observed that appellant does not appear to have acted with diligence. He was notified in January, 1960, that the lien had been filed, but apparently took no steps to

obtain the satisfaction of same. The record does not reflect that he advised the company that they had erroneously filed the lien, or made any demand to appellees that same be released, or that he had any correspondence with them at all. In fact, his first notice to the company was the filing of the complaint. Since the lien was not satisfied until the suit was commenced, we do feel, as set forth in the *Coffman* case, that appellant is entitled to his court costs expended to the time of satisfaction. The cause is therefore remanded with directions to award appellant his *court costs*.[4] In all other respects the decree is affirmed.

---

[4] This, of course, does not include attorney's fee.