Ted MONAGHAN *v.* Conley J. DAVIS

CA 85-65                                    700 S.W.2d 375

Court of Appeals of Arkansas
Division I
Opinion delivered December 11, 1985

*Joe H. Hardegree*, for appellant.

*Orvin W. Foster*, for appellee.

MELVIN MAYFIELD, Judge. Appellant, Ted Monaghan, appeals a decision of the Polk County Chancery Court holding that appellee, Conley Joe Davis, had thirty days from the date of the letter opinion in which to exercise an option to repurchase certain land that he had previously owned.

There is evidence that Davis was in financial difficulty. The first mortgage on 78 acres which he owned had been foreclosed and the property had been ordered sold by the chancery court. Davis approached a friend, Ray Goodner, about lending him enough money to pay off the mortgage. Goodner was unable to lend him any money but put Davis in touch with appellant Monaghan. Monaghan agreed to give Davis $35,000 for the property and a watch Davis owned.

Monaghan also agreed to give Ray Goodner an option to purchase the property and Goodner made an oral agreement to reconvey it to Davis. There was a dispute as to whether the term of

Goodner's option to purchase was six or twelve months, but it was agreed that the repurchase price was $40,000.

Davis executed and delivered to Monaghan a warranty deed. The option agreement was prepared by Monaghan's attorney and signed by Monaghan but was retained in the attorney's file rather than being delivered to Goodner. About a year later, Monaghan refused to convey the land and Davis filed suit to enforce the option.

On appeal to this court, Monaghan first cites ARCP Rule 17(a) and argues that the trial court erred in denying his motion to dismiss for lack of the joinder of Goodner who, it is alleged, was the real party in interest. The trial court held that Goodner was merely a conduit, that he had no interest in the property, and that he merely allowed the option to be placed in his name because Monaghan knew him and did not know Davis.

We think it is clear that the option to repurchase was made for the benefit of Davis. It is also clear that contracts made for the benefit of a party are actionable by that party. *Howell* v. *Worth James Const. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976); *Baker* v. *Bank of Northeast Ark.*, 271 Ark. 948, 611 S.W.2d 783 (Ark. App. 1981). However, the Reporter's Notes to Rule 17 state that it is generally held that the "real party" in interest is the person who can discharge the claim upon which the action is brought and not necessarily the party who is "ultimately entitled to the benefit of the recovery." Long before the adoption of the Arkansas Rules of Civil Procedure, we had a statute providing that actions must be prosecuted in the name of the real party in interest. *See* Ark. Stat. Ann. § 27-801 (Repl. 1962). That statute was involved in *House* v. *Long*, 244 Ark. 718, 426 S.W.2d 814 (1968), which is cited in support of the above statement from the Reporter's Notes, and the case is relied upon by appellant for the argument that Goodner is the real party in interest since the option to repurchase was in his name. It is indicated by the Reporter's Notes that federal courts generally interpret the real party in interest requirement as did *House* v. *Long*.

*House* v. *Long* also holds that one of the primary purposes of a real party in interest statute is to prevent defendants from being harassed by different suits arising from the same cause. That is also the purpose of Rule 17(a) of the Federal Rules of Civil

Procedure. In *Pace* v. *General Electric Company*, 55 F.R.D. 215 (W.D. Pa. 1972), the court said the rationale of the rule was to protect a defendant from a multiplicity of suits, to allow a defendant to present all his defenses, and to protect a defendant from multiple liability. But the opinion adds that "since the rule is made for the protection of the defendant, he may waive it by his inaction," and quotes from 6 Wright & Miller, *Federal Practice and Procedure* § 1554 (1971), where in a discussion of the proper method of raising the real party in interest issue, it is stated:

> Regardless of what vehicle is used for presenting the objection, it should be done with reasonable promptness. Otherwise, the court may conclude that the point has been waived by the delay and exercise its discretion to deny motions on the ground of potential prejudice.

In the instant case, the first time any point was raised about a real party in interest issue was in appellant's opening statement after each party had announced ready for trial. At that time the case had been pending for months, and the complaint had always contained the specific allegation that the option to repurchase had been granted to Goodner. Even though Goodner's involvement was clear from the day the suit was filed, the appellant waited until the trial started to complain that Davis was not the real party in interest. Under these circumstances, we think the appellant waived this issue by his delay in raising it. *See Hefley* v. *Jones*, 687 F.2d 1383 (10th Cir. 1982) (holding trial court acted within its discretion in refusing to allow a defendant to amend, 16 days prior to trial, to make the real party in interest a party to the suit). This is also in keeping with the application of our former real party in interest statute, Ark. Stat. Ann. § 27-801 (Repl. 1962). *See Farm Bureau Mut. Cas. Ins. Co.* v. *Robinson*, 262 Ark. 850, 562 S.W.2d 53 (1978) (holding an attempt to raise a defect of parties issue by motion for directed verdict at the end of the trial came too late); and *Morris* v. *Varnell*, 222 Ark. 294, 258 S.W.2d 889 (1953) (holding an objection during the trial came too late).

When this issue was raised in the instant case, the trial judge stated that he thought the matter should have been the subject of a motion to dismiss but reserved ruling until later. At the conclusion of the evidence, he held that Davis was the real

party in interest. However, we believe he reached the right result and we affirm if the court was correct for any reason. *Guthrie* v. *Tyson Foods*, 285 Ark. 95, 685 S.W.2d 164 (1985); *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979); *Morgan* v. *Downs*, 245 Ark. 328, 432 S.W.2d 454 (1968); and *Mayhew* v. *Loveless*, 1 Ark. App. 69, 613 S.W.2d 118 (1981).

■ We hold that Davis was a third party beneficiary of the option to repurchase agreement. He was a proper party to bring suit on that agreement. If Goodner should have been a party because the option was in his name, this point was waived by the appellant's failure to raise the issue before the trial started.

Appellant's next four arguments challenge the decision of the court in holding that the deed, which was absolute on its face, was actually a mortgage, and in granting appellee thirty days from the date of the letter opinion in which to exercise the option to repurchase. In explaining his decision, the trial court observed that although appellant had insisted that the transaction was a sale, appellee testified he thought he was merely giving appellant security for a loan and was unaware that the document was a warranty deed; that a copy of the option to purchase, in which appellant agreed to convey the property to Goodner, was in the record and contained the appellant's signature; and that it would go against the conscience of the court to enforce the transaction against appellee. Although he did not identify it as such, we think the real basis of the court's decision was that the deed actually constituted an equitable mortgage.

■ It is a well settled principle of equity jurisprudence in this state that where, at the time of sale, a vendor of land is indebted to the purchaser and continues to be indebted to him after the sale with the right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be construed by a court of equity as a mortgage. Evidence, written or oral, is admissible to show the real character of the transaction. *DeLoney* v. *Dillard*, 183 Ark. 1053, 40 S.W.2d 772 (1931). The question whether a deed to realty, absolute on its face, when construed together with a separate agreement or option to repurchase by the grantor amounts to a mortgage or is a conditional sale, depends on the intention of the parties in the light of all attendant circumstances. *Ehrlich* v. *Castleberry*, 227 Ark. 426, 299 S.W.2d 38

(1957). It is unquestionably within the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of land, with a reservation to the vendor of a right to repurchase the property at a fixed price and at a specific time. If such transaction is security for a debt, then it is a mortgage—otherwise, it is a sale. *Carter* v. *Zachary*, 243 Ark. 104, 418 S.W.2d 787 (1967) (quoting from *Newport* v. *Chandler*, 206 Ark. 974, 178 S.W.2d 240 (1944)).

■ The foreclosure of a mortgage is ordinarily necessary in order to cut off the mortgagor's equity of redemption and to transfer absolute title to the mortgaged property, even in the case of absolute deeds intended as mortgages. 59 C.J.S. *Mortgages* § 486 (1949). *See also Baugh v. Taylor*, 184 Ark. 545, 42 S.W.2d 992 (1931), where the court stated:

> The clause in the option contract making time of the essence thereof had the effect, perhaps, of waiving the right of redemption conferred by the statute, but did not dispose of the equity of redemption which antedates any statutory right of redemption. This equity can be disposed of only by foreclosure or a conveyance or by laches.

In the instant case, a finding that the deed coupled with the option constituted an equitable mortgage is not clearly against the preponderance of the evidence, and the chancellor did not commit error by granting the appellee thirty days in which to redeem his property.

Affirmed.

CRACRAFT, C.J., and CLONINGER, J., agree.