Charles L. BRIGHT *v.* Luthur D. GASS and Josephine
Gass

CA 91-337                                        831 S.W.2d 149

Court of Appeals of Arkansas
Division I
Opinion delivered April 29, 1992

*Peter DeStefano*, for appellant.

*Davis & Goldie*, by: *Steven B. Davis*, for appellee.

ELIZABETH W. DANIELSON, Judge. Charles Bright appeals from a decree of the Boone County Chancery Court denying his petition to quiet title to a parcel of real property. The decree also awarded compensatory and punitive damages for slander of title to appellees, Luther Gass and Josephine Gass, quieted title to the property in appellees, and awarded attorney's fees to appellees. We affirm.

This lawsuit originated from a real property transaction involving appellees and Bobby Tollerson and Betty Tollerson. The Tollersons entered into an oral agreement with appellees for the purchase of a tract of land which was reduced to writing on June 30, 1988. This document, which is titled "Option Deed," states:

> FOR AND IN CONSIDERATION of the sum of One Dollar, to me in hand paid, the receipt of which is hereby acknowledged, and the undertaking of *Bobby J. Tollerson & Betty S. Tollerson* to pay *Luther D. Gass & Josephine Gass* the sum of *Two Thousand eight Hundred Sixty Six* and *92/100 Dollars*, on or before the *30* day of *June*, *1989*, *Luther D. Gass & Josephine Gass* hereby grant, bargain, sell and convey unto the said *Bobby & Betty Tollerson* and to his heirs, successors and assigns, upon the conditions hereinafter written, the following described land, situate in *Boone* County, State of Arkansas, to-wit: . . . If said *Bobby J. Tollerson & Betty S. Tollerson* shall fail to pay the sum hereinbefore named within the times above set forth, this conveyance shall be void, and all rights and liabilities of either party thereunder shall cease, and said land shall revert to *Luther D. Gass &*

> *Josephine Gass* without any conveyance from the said *Bobby & Betty Tollerson.*
>
> And I, *Betty S. Tollerson* wife of said *Bobby J. Tollerson* hereby release and relinquish unto the said grantee all my right of dower in said land.

As discussed below, Luther Gass characterized this written document as an option to purchase the property. Bobby Tollerson, however, claimed that it had the effect of a deed and carried with it an equity of redemption.

Bobby Tollerson was late in making the payments several times between July 1988 and July 1989, but Luther Gass accepted them. Mr. Tollerson did not make any payments in September, October, November, or December of 1989; however, Mr. Tollerson found a renter for the property, who made two $200.00 payments in January and February 1990. No payment was made in March of 1990, and a final payment of $238.91 was made in April of 1990. In March 1990, Mr. Gass asked Mr. Tollerson to vacate the premises by the end of April. On May 3, 1990, the Tollersons executed a quitclaim deed of their interest in the property to appellant.

On May 4, 1990, appellant filed a petition for injunction and for an order quieting title to the property. Appellant asserted that the Option Deed from appellee to the Tollersons had conveyed legal title to the property to them and that appellant had acquired this interest. A temporary injunction was entered on May 4, 1990.

In their answer, appellees asserted that the Tollersons had not acquired any interest in the property because they had failed to satisfy the conditions set forth in the Option Deed. Appellees also filed a counterclaim against appellant. They asserted that appellant knew that the Option Deed was subject to a conditional limitation and that the filing of the quitclaim deed and this lawsuit constituted an intentional and malicious slander of title to the property for which they were entitled to recover compensatory and punitive damages. Appellees also requested that the option and quitclaim deeds be cancelled as clouds on their title. They also requested that the matter be transferred to circuit court and that a writ of ejectment be issued. The case was not transferred, however.

In an amended answer and counterclaim and third-party complaint, appellees added the Tollersons and the Internal Revenue Service as third-party defendants. Appellees asserted that the IRS had filed a tax lien against the Tollersons, thereby · further clouding appellees' title. Appellees also requested that the Option Deed be reformed to reflect the true intent of the parties.

At trial, Luther Gass testified that, when appellees first entered into the agreement with the Tollersons, they gave the Tollersons an amortization schedule and survey, but it was not until July 1988 that appellees gave them the Option Deed. Mr. Gass testified that he never intended to convey title by this document but simply intended to give the Tollersons an option to buy the property. Mr. Gass testified that the total purchase price for the property would be $25,000.00; that the Tollersons were to pay $238.91 per month on or before the tenth day of each month for fifteen years; that the Tollersons would get credit for the principal portion of their payments if they were made on time; and that neither he nor Mr. Tollerson intended that the Option Deed be filed for record. Mr. Gass emphasized that, when he gave Mr. Tollerson the Option Deed, he intended to give him an option to buy the property but not to make a sale at that time. He stated that, although he accepted late payments between July 1988 and July 1989, he made "another deal" with Mr. Tollerson after July 1989. Mr. Gass testified that, after he took the late payment in July 1989, he informed Mr. Tollerson that the Option Deed was no longer valid. He stated that he also told Mr. Tollerson that, "if he kept up and made good that later on after he had proved himself. . .we would do something." Mr. Gass stated that, after July 1989, he allowed Mr. Tollerson to stay in the building because he was afraid of him.

Bobby Tollerson testified that the Option Deed did not reflect the entire agreement with appellees. He stated that the total purchase price of the property was to be $25,000.00, payable in fifteen years, and that the price referred to in the Option Deed was simply the amount of the first twelve payments. Mr. Tollerson stated that the Option Deed was signed simply to show some kind of ownership on his part. Mr. Tollersons stated that Mr. Gass had taken his monthly payments late. He disputed Mr. Gass's statement that the Option Deed had expired in July 1989 and testified that he was under the impression that it was still

valid.

Mr. Tollerson admitted that appellant had paid him $10.00 for the quitclaim deed and had agreed to pay him another $1,000.00 if he won the lawsuit. Mr. Tollerson also admitted that he did not make any payments on the property between August 1989 and January 1990. He further admitted Mr. Gass said that when he got back from vacation, they would draft a contract because the year on the option was over.

Appellant admitted at trial that he had paid Mr. Tollerson $10.00 for the quitclaim deed and had agreed to pay him $1,000.00 if he could get clear title to the property. Mr. Bright also admitted that he is a real estate professional; that he did not have a lien search performed before he purchased the property; that, if he had done so, he would have been aware that Mr. Tollerson's interest was subject to a federal tax lien and that there were two unreleased mortgages on the property; and that he personally intended to own the property. He characterized Mr. Tollerson's interest in the property as a "real good gamble." Appellant admitted that he had never contacted Mr. Gass with regard to this transaction, even though he had a copy of the Option Deed at the time he made the deal with Mr. Tollerson. He also admitted that Mr. Tollerson had informed him that he was about $1,200.00 behind in his payments and that Mr. Gass had rejected offers to bring the debt current.

The chancellor found that appellant acquired no interest from the Tollersons by way of the quitclaim deed and, therefore, the IRS had no lien against the property. The chancellor cancelled the temporary injunction; quieted title to the property in appellees; and entered judgment for appellees on their counterclaim for slander of title and awarded judgment to appellees against appellant for $2,075.00 in compensatory damages, $1,000.00 in punitive damages, and awarded appellees an attorney's fee of $1,500.00.

In his first point on appeal, appellant asserts that the Option Deed operated as a conveyance and that, even if legal title to the property did not actually pass, equitable title, with an equity of redemption, did pass. Appellant points to the fact that, between July 1988 and July 1989, Mr. Gass routinely accepted late payments from Mr. Tollerson and argues that, because equity

abhors a forfeiture, the chancellor should have held that Mr. Gass waived the right to insist upon a forfeiture. Appellant argues that, by enforcing this private seizure of his property without legal process, the chancellor violated his due process rights. Appellant asserts that appellees' only remedy to terminate his interest in the property was a foreclosure action. We disagree.

Appellees correctly point out that appellant failed to raise the due process argument below. Issues raised for the first time on appeal will not be considered by the appellate court. *Cox v. Bishop*, 28 Ark. App. 210, 217, 772 S.W.2d 358, 361 (1989). Even arguments of constitutional dimensions must be argued below if they are to be preserved on appeal. *Chapin v. Stuckey*, 286 Ark. 359, 368, 692 S.W.2d 609, 615 (1985).

Due process requires that one be given a meaningful opportunity for a hearing, appropriate to the nature of the case and preceded by notice, before he is deprived of any significant property interest; except where some valid, overriding state interest justifies postponing the hearing until after the event. *Davis v. Schimmel*, 252 Ark. 1201, 1207, 482 S.W.2d 785, 789 (1972). Appellant brought this action in chancery court; he was awarded a temporary restraining order and was allowed to present his claims in a full trial on the merits.

Appellant is correct in asserting that forfeiture provisions, although valid and enforceable in contracts for the sale of land, may be waived by the acts and conduct of the parties. *Triplett v. Davis*, 238 Ark. 870, 871, 385 S.W.2d 33, 34 (1964). *See also Ashworth v. Hankins*, 248 Ark. 567, 572, 452 S.W.2d 838, 841 (1970); *Abshire v. Hyde*, 13 Ark. App. 33, 36, 679 S.W.2d 214, 216 (1984). It is also true that equity abhors a forfeiture and will seize upon slight circumstances that indicate a waiver in order to prevent forfeiture. *Triplett v. Davis*, 238 Ark. at 872, 385 S.W.2d at 34.

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. *Bethell v. Bethell*, 268 Ark. 409, 420, 597 S.W.2d 576, 581-82 (1980). A vendor may, by his acts and conduct, waive his right to forfeiture; such a waiver will be found to exist when the vendor habitually accepts delinquent payments. *Welch v. Cooper*, 11 Ark. App.

263, 267, 670 S.W.2d 454, 458 (1984). In most cases, the question of waiver is one of fact. *Id; Freeman* v. *King*, 10 Ark. App. 220, 226, 662 S.W.2d 479, 481 (1984). On our review of chancery cases, we will not set aside a chancellor's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *First Nat'l Bank and Trust Co.* v. *Hummel*, 25 Ark. App. 313, 317, 758 S.W.2d 418, 420 (1988).

In coming to the conclusion that the quitclaim deed to appellant conveyed nothing, the chancellor decided that the Tollersons had forfeited any right they had in the property by failing to comply with the conditions of the new 1989 oral agreement. The evidence shows that the parties entered into a new oral agreement that appellees would *later* enter into an installment land contract with the Tollersons *if* the Tollersons made their payments promptly. The evidence shows that the Tollersons did not make their payments promptly but, in fact, failed to make any payments the last four months of 1989. The evidence also shows that Mr. Gass notified Mr. Tollerson that the 1989 Option Deed was void and he would no longer tolerate late payments in their discussion in the summer of 1989. Therefore, even though Mr. Gass had accepted late payments until July 1989, he placed the Tollersons on notice that, thereafter, late payments would no longer be tolerated. *See Michelsen* v. *Patterson*, 9 Ark. App. 275, 278, 658 S.W.2d 413, 415 (1983).

In attempting to discern the real character of the transaction evidenced by the Option Deed, the chancellor correctly considered all of the written and oral evidence and properly focused on the intent of the parties in the light of all attendant circumstances. *Monaghan* v. *Davis*, 16 Ark. App. 258, 262, 700 S.W.2d 375, 378 (1985). In carrying out the true intent of the parties to the agreement, the chancellor properly looked beyond the mere form in which the transaction was clothed and considered all the facts and circumstances of the transaction, the conduct of the parties, and their relations to one another and to the subject matter. *Williams* v. *Cotten*, 9 Ark. App. 304, 313-14, 658 S.W.2d 421, 425 (1983). Conclusions concerning the true intent of the parties primarily involve issues of fact, and the chancellor's decision on such issues will not be reversed unless the findings are clearly erroneous. *Jones* v. *Jones*, 26 Ark. App. 1, 4-5, 759 S.W.2d 42, 44 (1988). Here, it is clear that, in 1989,

appellees entered into an oral agreement with the Tollersons that, if the Tollersons promptly made their payments, appellees would, at some future date, enter into a written installment contract to sell the property to them. The evidence also supports a finding that the Tollersons breached this condition, thereby forfeiting any rights they had in the property, and that they had no property interest to convey to appellant. Accordingly, we deny appellant's first point on appeal.

In his second point, appellant argues that the evidence does not support the chancellor's award of compensatory damages to appellees for slander of title. Appellant is correct in asserting that, before appellees can prevail on their slander of title argument, they must first establish that appellant acted with malice. *Hicks* v. *Early*, 235 Ark. 251, 253, 357 S.W.2d 647, 649 (1962). Appellant argues that he was "simply trying to help a distressed family, the Tollersons, against what appeared to be unscrupulous strong-arm tactics." However, appellant's own testimony admits that he paid only $10.00 for the quitclaim deed; that he agreed to pay the Tollersons $1,000.00 if he won the lawsuit; and that he intended to own the property himself.

We hold that the record provides more than adequate proof of the requisite malice or wantonness on the part of appellant to support the award for compensatory damages. Appellant is a licensed real estate professional. Nevertheless, when he obtained his quitclaim deed from the Tollersons and filed his petition to quiet title, he had not yet obtained a lien search on the property; failed to consider that the filing of the quitclaim deed and Option Deed would cloud appellees' title with a federal tax lien; did not attempt to follow up on Mr. Tollerson's story with appellees; obtained and *ex parte* temporary retraining order before he even obtained the lien search; paid only $10.00 for the quitclaim deed with a promise to pay $1,000.00 should he prevail at trial; and was aware, when he obtained the quitclaim deed, that the Tollersons were substantially in arrears in their payments. This evidence soundly supports the finding that he acted with malice, and we cannot say that the chancellor's findings in this regard are clearly erroneous.

In his second point, appellant also argues that the chancery court was without subject matter jurisdiction to award punitive

damages. Equity will not ordinarily enforce penalties, and it has been held that one who appeals to a court of equity for relief waives the ward of punitive damages as a matter of right. *Toney* v. *Haskins*, 7 Ark. App. 98, 109, 644 S.W.2d 622, 628 (1983). *See also Stolz* v. *Franklin*, 258 Ark. 999, 1008-09, 531 S.W.2d 1, 7 (1975).

■ Appellees assert that, under the clean-up doctrine, the chancery court did have jurisdiction to award punitive damages. Generally, the chancery court, having acquired jurisdiction for equitable purposes, may retain all claims in an action and grant all relief, legal or equitable, to which the parties in the lawsuit are entitled. *Fulcher* v. *Dierks Lumber & Coal Co.*, 164 Ark. 261, 277-78, 261 S.W. 645, 650-51 (1924). Unless equity is wholly incompetent to grant the relief sought, objection to its jurisdiction is waived if no motion to transfer to law is made. *Godwin* v. *Hampton*, 11 Ark. App. 205, 210, 669 S.W.2d 12, 16 (1984).

Here, appellant inappropriately characterizes the issue as one of subject matter jurisdiction. In *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986), the supreme court stated:

> As we pointed out most recently in *Crittenden County* v. *Williford*, 283 Ark. 289, 675 S.W.2d 631 (1984), when the issue is whether the chancery court has jurisdiction because the plaintiff lacks an adequate remedy at law, we will not allow it to be raised for the first time on appeal. We noted it is only when the court of equity is "wholly incompetent" to consider the matter before it will we permit the issue of competency to be raised for the first time on appeal. *See also Whitten Developments, Inc.* v. *Agee*, 256 Ark. 968, 511 S.W.2d 466 (1974).

> Viewed together, these cases demonstrate that we have come to the position that unless the chancery court has no tenable nexus whatever to the claim in question we will consider the matter of whether the claim should have been heard there to be one of propriety rather than one of subject matter jurisdiction. We will not raise the issue ourselves, and we will not permit a party to raise it here unless it was raised in the trial court.

> Of course, where the exclusive jurisdiction to adjudi-

cate a matter has been placed by the constitution or by statute in some other court, such as probate matters in the probate court or bastardy proceedings in the county court, the question of subject matter jurisdiction may not be waived and the chancery court is totally without power.

.... We hold that the question is not one of subject matter jurisdiction, and the failure of [appellant] to move for a transfer of the case or otherwise question the propriety of the chancellor hearing the case waived the issue, and it may not be raised for the first time on appeal.

289 Ark. at 175-76, 711 S.W.2d at 455-56.

Here, appellees did not "waive" their request for punitive damages by asserting it in a compulsory counterclaim in an action brought in equity by appellant. Appellant has made no showing that he objected to the chancery court's consideration of this issue or that he moved to transfer the matter to circuit court. We therefore deny appellant's second point on appeal.

Affirmed.

ROGERS and JENNINGS, JJ., agree.