BANQUE INDOSUEZ *v.* Gerald KING, et al.

CA 93-766                                    878 S.W.2d 432

Court of Appeals of Arkansas
Division II
Opinion delivered July 6, 1994

*Dover & Dixon, P.A.*, by: *Michael R. Johns* and *Thomas S. Stone*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Arnold M. Jochums*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. This appeal involves a dispute under Act 401 of the Public Grain Warehouse Law between the

creditors of Sunrice Milling, Inc., a public grain warehouse, over the proceeds from the sale of rice in its possession. The chancellor held that Ark. Code Ann. § 2-17-303(a) (1987) protected the claims of the appellees who produced the rice and that their claims were entitled to be paid first from the proceeds from the sale of the rice. On appeal, the appellant, Banque Indosuez, a secured creditor of Sunrice, claims that the appellees' claims are not entitled to protection under the Public Grain Warehouse Law and that it is entitled to priority in the proceeds by virtue of its perfected security interest in the Sunrice inventory.

Sunrice Milling, Inc. (Sunrice), operated a rice mill and warehouse in Crawfordsville, Arkansas. The appellant, Banque Indosuez, loaned operating capital to Sunrice and obtained a security interest in Sunrice's real and personal property including its inventory. In late 1991 and early 1992, Sunrice verbally agreed to purchase rice produced by the appellees and had their rice delivered to its warehouse. The appellees were never paid for their rice, however, and Sunrice discontinued operating its business shortly thereafter. Sunrice was then audited by the Arkansas State Plant Board, and in the course of its audit, the State Plant Board determined that a mistake had been made in its past audits of Sunrice. The State Plant Board decided that, since Sunrice did not have priced scale tickets or any other written documentation evidencing its alleged purchase of the appellees' rice, the rice in its possession should be considered stored grain rather than inventory. The effect of this decision was to make the rice produced by the appellees "stored grain" under the Arkansas Public Grain Warehouse Law. Because the rice in Sunrice's possession was insufficient to cover the claims of Sunrice's creditors, a petition for receivership was filed by the State Plant Board, and the State Plant Board Director, Gerald King was appointed receiver.[1] Under the receiver's proposed plan of distribution, the appellees' claims were given priority to the proceeds over the claim of the appellant. The appellant was allowed to intervene and at trial contended that the State Plant Board erred in determining that the rice in Sunrice's possession was stored grain rather than grain purchased by Sunrice and subject to its perfected inventory lien.

---

[1] Although Gerald King is also considered an appellee in this appeal, our reference to the appellees refers only to the claimants whose grain was in the possession of Sunrice at the time it went into receivership.

At the conclusion of the trial, the chancellor held that, because the rice was not beneficially owned by Sunrice and title to the rice had not been transferred to Sunrice by written document, the grain should be considered stored grain and subject to the provisions of Act 401 of 1981 of the Public Grain Warehouse Law. Act 401 § 2, codified at Ark. Code Ann. § 2-17-303, voids any encumbrance placed by a warehouseman on grain in its possession unless the owner of the grain has transferred title of the grain to the warehouseman by written document. The chancellor therefore concluded that the claims of the appellees were entitled to priority in the proceeds and approved distribution of the proceeds according to the receiver's plan. Additionally, the chancellor held that there was sufficient evidence of constructive fraud and that it would be inequitable to hold that Sunrice or the appellant beneficially owned the rice.

The appellant couches its arguments in terms of the applicability of Act 401 of 1981 to the case at bar. These arguments are premised on the appellant's contention that the appellees sold their grain to Sunrice. The arguments are without merit, however, because the premise is unfounded. In our view, the threshhold question in this case is whether, on this record, the chancellor's conclusion that there was no sale is clearly erroneous or against the preponderance of the evidence. Upon our review of the record, we cannot say that the chancellor was wrong.

Act 401 of 1981 amended the Public Grain Warehouse Law, which is codified at Ark. Code Ann. § 2-17-201 *et seq*. Section 2-17-303, which is the basis of the present dispute, provides that:

>   (a) Ownership of grain shall not change by reason of an owner delivering grain to a public grain warehouseman. No public grain warehouseman shall sell or encumber any grain in his possession unless the owner of the grain has by written document transferred title of the grain to the warehouseman.

>   (b) Notwithstanding any provision of the Uniform Commercial Code, as amended, 4-1-101 et seq., to the contrary or any other law to the contrary, all sales and encumbrances of grain by public grain warehousemen are void and convey no title unless the sales and encumbrances are sup-

ported by a written document executed by the owner specifically conveying title to the grain to the public warehouseman.

In the case at bar, it is undisputed that no documents of transfer or conveyance of title were executed by the appellees nor were the appellees paid for their rice that Sunrice had delivered to its warehouse. Therefore, the burden was on the appellant to show that a sale occurred.

> The clear language of Act 401 defines "owner" and declares that any transfer of title of grain by a warehouseman is void without the original written transfer of title from the grain depositor to the warehouseman. In other words, the farmer continues to own his grain until he signs a document giving up title to the grain. This requirement is similar to the "statute of frauds" title transfer requirement for realty. Once the farmer shows that he signed no document, the initial legal conclusion under the statute is that no sale occurred. The burden of proof is then on the party alleging the occurrence of a sale. A successful defense against the farmer would be to prove that the farmer did sell and should therefore be estopped from asserting void title.

Gregory K. Stephens, *Act 401 of the Public Grain Warehouse Law: An Exception to the U.C.C. Concept of Voidable Title*, 37 Ark. L. Rev. 293, 304-06 (1984).

Sunrice, as a licensed public grain warehouse, was subject to all the provisions of the Arkansas Public Grain Warehouse Law including the rules and regulations adopted by the State Plant Board. *See* Ark. Code Ann. § 2-17-205. Regulation VIII(B)(4) requires that all scale tickets issued by a warehouse must be marked to denote the type of transaction and applies to all persons delivering grain to a public grain warehouse. The Plant Board relied on this regulation in concluding that the rice at Sunrice was stored and not owned.

Edward Downing, manager of the Grain Warehouse Division of the Arkansas State Plant Board, testified that he is responsible for the licensing and auditing of public grain warehouses and that the Plant Board audits facilities to determine whether there is stored grain in a facility and if there is enough grain in a facil-

ity to cover the warehouse's obligations. He stated that, under the Public Grain Warehouse Law, everything is considered "stored grain" until documents such as a priced-scale ticket, a contract, or a purchase where a check has been written can prove otherwise. In order to make this determination, he testified that the auditor reviews the scale tickets on received grain and, if the scale tickets are priced, the grain represented by those tickets is not considered "stored grain." He further testified that Ark. Code Ann. § 2-17-202(7) includes an unpriced scale ticket under the definition of a warehouse receipt and that is why the Plant Board considers unpriced scale tickets as obligations of the warehouse. He testified that there are regulations and instructions which the Plant Board has issued specifying how the licensed warehousemen are to handle scale tickets; that warehouseman are supposed to issue scale tickets on all grain received in the facility; and that there are boxes on the scale tickets, which can be checked to show whether the grain is for sale, stored, or condition or purchase contract. He also stated that, if a warehouse has a priced scale ticket, it can then issue itself a warehouse receipt in its own name and use it as collateral at a lending institution to borrow money. In reference to the claims of the appellees J & G Farms, P & C, Inc., and Phillip Pollard, Downing testified that he audited Sunrice after it shut its doors and determined that there were no priced scale tickets, contracts transferring title, or evidence that Sunrice had paid for the grain from these producers.

Roger Gilmore, former mill manager and rice buyer for Sunrice, testified that Sunrice's primary business was buying rice from farmers, milling the rice, and selling the rice and its by-products. He stated that the purchases he made for Sunrice were done by verbal agreement and that payment was made by Sunrice's Houston office directly to the farmers after the Houston office received his "rough rice report." He stated that, normally, he would fill out a "buyer's report" when he made a deal with a farmer; that the buyer's report contained the estimated quantity of grain, the milling yields, and the quoted price; and that he then arranged for transportation of the rice. He stated that a scale ticket showing the weight of the rice was completed when the grain was delivered to Sunrice and, after he received the scale ticket, he then completed a rough rice purchase report (also known as a settlement report) on which he figured the price

and then sent it to Houston. He stated that the "buyer's report," scale ticket, and the "rough rice report" were routinely used in every transaction and it was the only paperwork he had on acquiring rice. Although he admitted that Sunrice did not issue priced scale tickets, evidencing its purchase of the grain, Gilmore contended that the rice was all priced because he had buyer's reports showing the prices and the scale ticket numbers. He stated that the farmers were entitled to scale tickets after the trucks were weighed but that the buyer's reports that he completed which showed the agreed price were not furnished to the farmers on a regular basis. Concerning the rice he purchased from J & G Farms, he testified that nothing was provided J & G evidencing Sunrice's receipt of its rice. He also testified that it was his personal opinion that Sunrice did not own the rice until the producer was paid.

The appellees' witness, Chris O'Neal, of P & C, Inc., a farming operation, testified that P & C delivered 8,400 bushels of rice to Sunrice in 1992 but did not receive any scale tickets. He stated that he had talked with Gilmore in November and they had agreed on a price and delivery but he had locked in a price at a later date.

Greg Edmondson, partner in the appellee J & G Farms, testified that he had gotten with Gilmore at Sunrice, saw what Sunrice was offering for rice, and that Sunrice had arranged to come and pick up his rice. He stated that the rice was for cash as soon as it was delivered, there was no contract signed, and he never signed any document transferring title to Sunrice. He testified that it was his understanding that Sunrice would hold the rice until he got paid and, once paid, the rice was theirs and they could mill it. He admitted, however, that he had no specific conversation with Gilmore to this effect.

On our review of chancery cases, we will not set aside a chancellor's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *Bright* v. *Gass*, 38 Ark. App. 71, 78, 831 S.W.2d 149, 153-54 (1992). Based on our review of the record, we cannot say that the chancellor erred in finding that no sale of the disputed grain occurred and, therefore, that the grain in question was stored grain.

Because we affirm the chancellor's holding as to the appellant's first point, we need not address the appellant's contention that the chancellor erred in finding constructive fraud.

Affirmed.

JENNINGS, C.J., and ROBBINS, J., agree.