Tommy HODGES & Central Crossing, L.L.C.  *v.*
JOHN F. JENKINS CONTRACTING, INC.

CA 06-591                                    252 S.W.3d 152

Court of Appeals of Arkansas
Opinion delivered March 7, 2007

*Wood, Smith, Schnipper, Clay & Vines*, by: *Don M. Schnipper*, for appellants.

*Walthall Law Firm, P.A.*, by: *G. Christopher Walthall*, for appellee.

L ARRY D. VAUGHT, Judge. This case involves the statute of frauds. The trial court held that the oral agreement at the

center of this dispute was a contract for services, not for an interest in land or goods at a price over $500, and was, therefore, not barred by the statute of frauds. We agree with the trial court's holding and affirm.

In April 2004, appellant Tommy Hodges, the manager of appellant Central Crossing, L.L.C. (Hodges), negotiated with John Jenkins, the owner of appellee John F. Jenkins Contracting, Inc., for Jenkins to perform excavation work on a tract of land along Central Avenue in Hot Springs being developed by Hodges. According to Jenkins, Hodges orally agreed to pay him $2 per cubic yard to remove approximately 80,000 cubic yards of dirt from the property. In reliance on this agreement, which was not reduced to writing, Jenkins entered into a contract with D&D Paving to sell 80,000 cubic yards of dirt for $3 per cubic yard for use in a state highway project along Higdon Ferry Road in Hot Springs. Soon after, Jenkins left the country. When he returned, he learned that Hodges had secured the services of another excavator at a lower price. Jenkins sued Hodges for the full contract price. Hodges denied that the parties had any agreement and raised the statute of frauds as a defense.

At trial, Jenkins testified that he wanted to participate as a subcontractor for D&D Paving on the highway project and that, when he learned that Hodges had some "overburden" that needed to be removed from his property, he called Hodges. Over the course of three phone calls, Jenkins said, Hodges agreed to pay $2 per cubic yard for Jenkins to remove about 80,000 cubic yards of dirt from his property. According to Jenkins, he informed Hodges that he was participating in the highway project. Jenkins testified that he would not have entered into the agreement with D&D Paving if he had not first had a contract with Hodges. Jenkins further testified that he told Hodges that he would be going to Honduras on a church mission for approximately ten days and that they agreed to get together to work out the remaining details of the contract when he returned. Jenkins stated that, while he was in Honduras, Hodges left a message that he would not let Jenkins have the dirt. Although Jenkins found another source for the dirt, he said, he did not receive any money to remove it, thereby losing $2 per cubic yard in profit. Hodges testified that, although the parties had entered into negotiations, they did not have an agreement.

At the conclusion of Jenkins's case, Hodges moved for directed verdict, which the trial court denied. The issues of

whether the parties had a contract and the amount of Jenkins's damages were submitted to the jury, which returned a verdict for Jenkins in the amount of $160,000. Hodges moved for judgment notwithstanding the verdict on the bases of the statutes of frauds applicable to sales of interests in land and goods for a price over $500. In a letter opinion, the trial court found that:

> [Hodges] was paying to have dirt removed. What was ultimately done with it is collateral to the nature of the contract between [Jenkins] and [Hodges]. If [Jenkins] had moved dirt from a high spot to a low spot, that would clearly be service. The fact that in the process he removed dirt which he ultimately could sell elsewhere doesn't change the nature of the agreement.

On October 31, 2005, the circuit court entered judgment for Jenkins and an order denying the motion for judgment notwithstanding the verdict, ruling that the contract was for services, not goods or "other identifiable things attached to realty," and, therefore, not subject to the statute of frauds. Hodges filed a timely notice of appeal.

Hodges contends that the trial court erred in entering the judgment and denying his motion for judgment notwithstanding the verdict because the parties' agreement was barred by the statute of frauds. Because the only issue presented in this appeal is a question of law, our review is de novo. *Sowders v. St. Joseph's Mercy Health Center,* 368 Ark. 466, 247 S.W.3d 514 (2007).

Hodges argues that the oral contract between the parties was unenforceable because it concerned the sale of an interest in land or, alternatively, of goods for the price of more than $500. Arkansas Code Annotated section 4-59-101(a)(4) (Repl. 2001) states that, to be enforceable, a contract for the sale of any interest in land must be in writing and be signed by the party to be charged. Hodges asserts that Jenkins is simply attempting to enforce an unwritten *profit á prendre* and cites cases from other states that have held that an excavation contract is covered by the statute of frauds. *See DeLuca v. C.W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 391 A.2d 170 (1978); *Theberge v. Canadian Pac. Ry. Co.,* 119 Vt. 193, 122 A.2d 848 (1956); *DePugh v. Mead Corp.,* 79 Ohio App.3d 503, 607 N.E.2d 867 (1992). Those cases are distinguishable, however, because they involved the purchase of soil by the party doing the excavation work.

Article Two of the Uniform Commercial Code, which applies to the sale of goods, does not apply to the sale of realty or services. 1 James J. White & Robert S. Summers, *Uniform Commer-*

*cial Code* § 2-2 (5th ed. 1996). According to Ark. Code Ann. § 4-2-201(1) (Repl. 2001), an oral contract for the sale of goods for the price of $500 or more is not enforceable. Arkansas Code Annotated section 4-2-106(1) (Repl. 2001) provides that "[a] 'sale' consists in the passing of title from the seller to the buyer for a price (§ 4-2-401)." Arkansas Code Annotated section 4-2-107(1) (Repl. 2001) provides:

> A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

If Jenkins had agreed to pay Hodges for the dirt, this transaction would have been subject to the Uniform Commercial Code's statute of frauds, because Jenkins was to sever the dirt. *See* Ark. Code Ann. § 4-2-107(1). However, according to the oral agreement, Hodges was to pay Jenkins. Therefore, the trial court correctly characterized this contract as being one for services and not for the sale of goods or an interest in land. In attempting to discern the real character of a transaction, the trial court should consider all of the evidence and focus on the intent of the parties in the light of all attendant circumstances. *Smith v. Eisen,* 97 Ark. App. 130, 245 S.W.3d 160 (2006); *Bright v. Gass,* 38 Ark. App. 71, 831 S.W.2d 149 (1992). Conclusions concerning the true intent of the parties primarily involve issues of fact. *Id.* It is true that, according to the contract's terms, Jenkins would acquire the dirt by performing his part of the bargain, i.e., doing the excavation work. However, to agree with Hodges's position, one would have to accept that Hodges agreed to pay Jenkins $2 per cubic yard for Jenkins to buy Hodges's dirt, which makes no sense. The only reasonable conclusion is that Hodges promised to pay Jenkins $2 per cubic yard to remove the dirt from Hodges's property. Thus, Jenkins was the seller; Hodges was the buyer; and Jenkins's services, not the dirt, were sold. Jenkins's consideration was $2 per cubic yard of dirt removed; Hodges's consideration was the enhancement of his property for development. Between these parties, Jenkins's acquisition of the dirt, in the process of removing it from Hodges's property, was of no consequence, nor was his contract to sell the dirt to a third party. We affirm the trial court's

ruling that this contract was for the sale of services, not goods or an interest in land, and, therefore, was not subject to the statute of frauds.

Affirmed.

HEFFLEY and MILLER, JJ., agree.