Cite as 2025 Ark. App. 35

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-23-702

| | |
|---|---|
| CHURCH ON THE ROCK - TEXARKANA<br><br>APPELLANT<br><br>V.<br><br><br>ACE SIGNS OF ARKANSAS, LLC<br>APPELLEE | Opinion Delivered January 29, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION<br>[NO. 60CV-20-4530]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

Church on the Rock – Texarkana (COTR) appeals from the order of the Pulaski County Circuit Court granting summary judgment to appellee Ace Signs of Arkansas, LLC. The circuit court dismissed COTR's complaint upon finding that it was time-barred by the four-year statute of limitations applicable to actions for breach of contract for the sale of goods under the Uniform Commercial Code (UCC). We affirm.

COTR filed suit against Ace for breach of contract on August 17, 2020, four years and eleven months after the parties entered into a contract on September 1, 2015, for Ace to manufacture and install a sign on COTR's property. The contract listed four components with separate prices for each. The descriptions were as follows:

Manufacture and install double sided 9′ x 18′ new lit top cabinet with peaked top. To include removal of existing cabinet.

Manufacture and install double sided 9′ x 16′ 10mm full color LED display To include removal of existing cabinet, software, training, wireless communication and five year warranty.

Manufacture and install pole shroud with steel framing and aluminum exterior.

Manufacture and install double sided 6′ illuminated cross.[1]

The most expensive component of the $173,058.65 contract price was the LED display costing $138,913.20. The sign was installed and the contract price was paid, but COTR alleged that the LED display failed to properly function from the beginning.[2] COTR alleged that Ace promised to remedy the problems and eventually promised to replace all the LED tiles, but it failed to do so.

Ace filed a motion for summary judgment arguing, in part, that COTR's complaint was time-barred by the four-year statute of limitations applicable to claims for breach of contract for the sale of goods under the UCC. Ace's motion was supported by deposition excerpts from COTR's pastors, John Miller and Mike Ulmer, and Ace's owner, Jason Offutt. In response to the motion for summary judgment, COTR argued that the UCC statute of limitations did not apply because the contract was not predominantly for the sale of goods;

---

[1]Pictures of the completed work show that the components were installed vertically with the cross on top, the lit cabinet below it, and the LED display below the lit cabinet.

[2]The alleged problems included "glaring aberrations," tiles that failed to match the color of surrounding tiles, and "a patchwork of different colored panels" in place of a designated background color.

rather, it was a construction contract. COTR further argued that even if the statute of limitations did apply, the cause of action did not accrue until 2018.

The circuit court adopted Ace's arguments and found that the contract involved the sale of goods and was subject to the UCC's four-year statute of limitations. Accordingly, the court found that COTR's complaint was time-barred and dismissed it with prejudice.

Arkansas Rule of Civil Procedure 56(c)(2) provides for summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of sustaining a motion for summary judgment; once the moving party meets this burden, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Tony Smith Trucking v. Woods & Woods, Ltd.*, 75 Ark. App. 134, 55 S.W.3d 327 (2001). On appeal, we view the evidence in the light most favorable to the opposing party and resolve all questions and ambiguities against the moving party. *Id.* Summary judgment is proper when the statute of limitations bars the action. *Id.*

I. *Application of the UCC*

We must first address whether the UCC applies to this case. Article 2 of the UCC applies to "transactions in goods." Ark. Code Ann. § 4-2-102 (Repl. 2020). "Goods" means

> all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8 of this title) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified

things attached to realty as described in the section on goods to be severed from realty (§ 4-2-107).

Ark. Code Ann. § 4-2-105(1) (Repl. 2020). Article 2 does not apply to the sale of services. *Hodges v. John F. Jenkins Contracting, Inc.*, 98 Ark. App. 125, 252 S.W.3d 152 (2007). Courts, however, are frequently faced with contracts involving both goods and services—so-called "hybrid" contracts. *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322 (11th Cir. 1998). Most courts follow the "predominant factor" test to determine whether such hybrid contracts are transactions in goods, and therefore covered by the UCC, or transactions in services, and therefore excluded. *Id.* Under this test, the court determines "whether their predominant factor, their thrust, their purpose," reasonably stated, is the rendition of service, with goods incidentally involved or is a transaction of sale, with labor incidentally involved. *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974). In determining the predominant factor of a contract, courts have looked at the language of the contract, the manner in which the transaction was billed, and the mobility of the goods. *See BMC, supra.* Although Arkansas has not adopted a test for such hybrid contracts, the Arkansas supreme court previously examined the "essence" and "principal object" of an agreement to determine whether it was a service contract or an agreement for the sale of goods. *See Robertson v. Ceola*, 255 Ark. 703, 705, 501 S.W.2d 764, 766–67 (1973).

Whether a contract is predominantly for goods or services is generally a question of fact. *BMC, supra.* However, when there is no genuine issue of material fact concerning the contract's provisions, a court may determine the issue as a matter of law. *Id.* Here, the circuit

court decided as a matter of law that the contract was for the sale of goods. On appeal, the parties agree that the predominant-factor test should be used to determine the purpose of their contract. We agree with Ace that application of the test leads to the conclusion that the contract was predominantly a transaction for the sale of goods.

We first look at the language of the contract itself for insight into whether the parties believed the goods or services were the more important element of their agreement. *BMC, supra.* Contractual language that refers to the transaction as a "purchase," for example, or identifies the parties as the "buyer" and "seller," indicates that the transaction is for goods rather than services. *Id.* Here, the contract identifies COTR as the "customer" and Ace as the "company." The contract states that "Company and Customer enter into the following customer contract ("Contract") regarding services provided for the Job Number identified above and more specifically described on the first page of this Contract (the "Project") and agree to the following terms and conditions regarding such Project." The contract further states that "company shall be deemed an independent contractor."

COTR argues that identification of a "contractor" and a "project" point to a contract for service. *See Frommert v. Bobson Constr. Co.*, 558 N.W.2d 239, 241 (Mich. Ct. App. 1996) (noting that defendant is referred to as a contractor in the contract); *In re Trailer & Plumbing Supplies*, 578 A.2d 343, 345 (N.H. 1990) (holding that the language of the contract identifying the construction plan as a "project" was a factor indicating an agreement for the provision of services). On the other hand, COTR's identification as the "customer" indicates a transaction in goods. *See Bailey v. Montgomery Ward & Co.*, 690 P.2d 1280, 1282 (Colo.

5

App. 1984) (holding that term "customer" was among several factors signaling a transaction in goods).

We next examine the manner in which the transaction was billed. When the contract price does not include the cost of services, or the charge for goods exceeds that for services, the contract is more likely to be for goods. *BMC, supra*. The contract here bills for four separate items to each be manufactured and installed. The LED-display quote also says it is to "include removal of existing cabinet, software, training, wireless communication and five year warranty." COTR points to this list of services and contends that the construction and installation of the LED display, which was made of four hundred LED tiles, was also a service. COTR argues that another relevant consideration is the fact that the four hundred LED tiles were of little discernable value to it without Ace's services. *See Lucien Bourque, Inc. v. Cronkite*, 557 A.2d 193 (Me. 1989) (noting that in a contract for excavation and construction of a roadway, goods such as sand and gravel were of little value to party absent services that went along with them).

The contract here does not break down the price between goods and services such that it is stated which costs more. However, this lack of a price breakdown where the plaintiff would pay for the finished products and would not pay separately for the defendant's services has been said to strongly indicate the predominant purpose of the agreement is the sale of goods. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293 (7th Cir. 2018) (citing *Bruel & Kjaer v. Village of Bensenville*, 969 N.E.2d 445, 450–51 (Ill. App. Ct. 2012) (payment of one

price after delivery and installation of equipment, rather than multiple payments based on services, indicated contract's predominant purpose was for the sale of goods)).

Last, we examine whether the contract involved movable goods, which is another hallmark of a contract for goods rather than services. *BMC, supra.* The UCC's definition of goods makes clear the importance of mobility in determining whether a contract is for goods. *Id.* Mobility is measured as of the time the goods are identified to the contract rather than after the contract is completed. *Id.* Consequently, equipment or materials that were movable, but were installed and became immobile fixtures as part of the contract, are still "movable" within the UCC's meaning. *Id.*; *Bonebrake, supra.* Thus, for example, contracts for the sale and installation of equipment are frequently (but not always) held to be transactions in goods. *Id.* Construction contracts, however, such as those for construction of a swimming pool or house, are usually held to be transactions in services. Although construction contracts typically involve materials that qualify as goods (such as concrete or roofing tiles, for example), the services element of such contracts is usually held to be dominant. *Id.*

COTR concedes that the LED tiles and cabinets are movable goods under the UCC, but it argues that the contract was not for tiles and cabinets but for the construction and installation of a sign that was not in existence at the time of the contract. In *BMC*, however, the court held that a contract to design, manufacture, and install equipment involved movable goods. The defendant designed and fabricated equipment in its own facilities and planned to move it to BMC's plant once completed. The court held that the equipment was

7

clearly movable at the time it was identified to the contract. Furthermore, the sale of equipment is not removed from the scope of Article 2 merely because the equipment was specially designed and manufactured before delivery or installed by the supplier. *BMC, supra.*

Here, although the sign did not exist at the time the contract was made, it was movable at the time it was identified to the contract. In the absence of an agreement otherwise, identification of goods occurs, in the context of a contract for the sale of future goods, when goods are shipped, marked, or otherwise designated by the seller as goods to which the contract refers. *NewSpin, supra.* At the time the sign was designated by Ace as the goods referred to in the contract, the sign was movable prior to being attached to preexisting poles on COTR's property. Although, as COTR argues, the installation involved welding and the use of a crane, mobility is not measured after the contract is completed. *BMC, supra.* Furthermore, unlike a house or swimming pool, the sign could conceivably be uninstalled.

Considering the relevant factors, we hold that the contract for Ace to manufacture and install the sign involved movable goods akin to that in *BMC* rather than a construction contract. The predominant factor of the contract was a transaction for the sale of goods with labor incidentally involved. *See TB of Blytheville, Inc. v. Little Rock Sign & Emblem,* Inc., 328 Ark. 688, 946 S.W.2d 930 (1997) (noting that a contract for the sale of a Taco Bell sign to be installed on the restaurant's premises was a contract for the sale of goods). Accordingly, the UCC's four-year statute of limitations applies.

II. *Date of Breach*

8

COTR argues that even if the UCC governs the contract, its claim is not time-barred because the record does not indicate when the breach occurred. The statute of limitations provides as follows:

(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Ark. Code Ann. § 4-2-725 (Repl. 2020).

Ace argues that COTR consistently claimed below that the alleged defects appeared from the time the sign was installed. Although the date of the installation was never precisely established, COTR's response to Ace's summary-judgment motion stated that the LED tiles failed to properly function on an almost monthly basis "from 2015 forward." COTR's response was supported by affidavits from Pastors Mike Ulmer and John Miller. Both stated that "[f]rom 2015 through 2020, Ace Signs continued to promise that it would resolve the problems with the sign. Ace Signs continued to promise that it would fulfill its contractual obligation to provide a properly operational sign, but between 2015 and 2020 Ace never resolved the problems." Thus, COTR's own witnesses established that there were problems with the sign in 2015. As Ace argued below, even if the sign was installed as late as December 2015, the complaint is not timely. The breach would have had to have occurred after August

9

16, 2016, to be timely brought within four years. Because the alleged failure to provide a properly functioning sign occurred in 2015, COTR's claim was not brought within four years after the cause of action accrued.

### III. *Breach of Warranty*

Under the heading "breach of contract" in its complaint, COTR alleged that, in addition to breach of contract, Ace had "breached contractual, express and implied warranties" by failing to properly design, manufacture, and construct the LED display such that it functioned properly as promised and by failing to remedy the display by replacing the LED tiles. On appeal, COTR argues that the circuit court's dismissal of the entire complaint pursuant to the four-year statute of limitations included COTR's claim for breach of warranty. COTR now contends that its breach-of-warranty claim was not time-barred, either, because it was filed within a five-year warranty period or because the time to bring the claim was prolonged pursuant to section 4-2-725(2) because the warranty "explicitly extends to future performance of the goods."[3] These arguments, however, are not preserved. In *Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243, the appellants argued for the first time on appeal that their claims were not barred by the statute of limitations pursuant to the doctrine of relation back. The supreme court held that the appellants neglected to raise this issue in the circuit court, and it is axiomatic that this court will not consider arguments raised for the

---

[3]COTR also alleges here that Pastor John Miller testified that the sign was installed in 2016. COTR cites to a page of Miller's deposition attached to Ace's motion for summary judgment. The reference to 2016, however, was made in a question posed to Miller, and neither the entire question nor Miller's response was included in the attached excerpt.

first time on appeal.  *Id.*  As in *Worden*, COTR did not raise these arguments in response to the motion for summary judgment; accordingly, we do not address them.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Montgomery Law Firm, PLLC*, by: *Wm. Blake Montgomery*; and *Elliott Law Firm*, by: *Jeffrey C. Elliott*, for appellant.

*Danny R. Crabtree*, for appellee.